# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pekin Insurance Co. v. Equilon Enterprises LLC*, 2012 IL App (1st) 111529

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. EQUILON ENTERPRISES LLC, d/b/a Shell Oil Products US; SHELL OIL COMPANY; and WALDEMAR ZABLOCKI, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1529 |
| Filed | November 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff insurer had a duty to defend defendant oil company as an additional insured in an underlying personal injury action for the injuries suffered when the underlying plaintiff lit a cigarette while gasoline was being delivered at the insured station, notwithstanding the insurer's contention that coverage for the oil company was limited by endorsements to negligence in granting the franchise or vicarious liability, since the endorsements were ambiguous and had to be construed against the insurer. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-2619; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Robert Marc Chemers and Richard M. Burgland, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellant. |
| | |
| | Kevin B. Duckworth, Russell K. Scott, and Samuel Henderson, all of Greensfelder, Hemker & Gale, P.C., of St. Louis, Missouri, for appellees. |

| Panel | JUSTICE GARCIA delivered the judgment of the court, with opinion. |
| | Justice Hall concurred in the judgment and opinion. |
| | Justice Gordon specially concurred, with opinion. |

**OPINION**

¶ 1    In this declaratory action arising out of a personal injury suit, the circuit court denied plaintiff Pekin Insurance Co.'s motion for summary judgment on the question of duty to defend and, instead, granted judgment as a matter of law to defendants Equilon Enterprises, d/b/a Shell Oil Products US, and Shell Oil Company (collectively Shell), as additional insureds under the policy. Waldemar Zablocki filed suit for injuries he sustained while lighting a cigarette behind a gas station operated by Summit Shell (Summit), d/b/a Mary's Station II, Inc. The complaint alleged that Shell and Summit were directly liable for Zablocki's injuries after an explosion occurred while fuel was being delivered to the station. Shell tendered the Zablocki action to Pekin for defense. In its motion for summary judgment, Pekin argued that an endorsement to the policy limited coverage to Shell for "negligence in the granting of a franchise" and a second endorsement limited coverage "to liability arising out of [Summit's] operations *** [or its] premises." According to Pekin, the Zablocki action did not allege negligence in the granting of the franchise or vicarious liability against Shell, which foreclosed a finding that Pekin owed a duty to defend. On *de novo* review, we conclude the two endorsements to the Pekin policy when read together are ambiguous. Based on the unclear endorsements, in particular the endorsement that purported to limit coverage to vicarious liability, Pekin has not demonstrated that the allegations of the underlying complaint do not bring the case potentially within the policy's coverage. We affirm the circuit court's judgment that Pekin has a duty to defend Shell.

¶ 2                                  BACKGROUND

¶ 3    Waldemar Zablocki was injured in an explosion at the gas station operated by Summit. In his personal injury lawsuit, Zablocki alleged the explosion occurred when he lit a cigarette behind the gas station while a truck delivered gasoline to the underground tanks of the station. In addition to Summit and Shell, Zablocki sued A.D. Connor, Inc., the party delivering the gasoline at the time of the explosion, which has no role in this appeal. The Shell defendants, Equilon Enterprises and Shell Oil Company, are subsidiaries of the Royal

-2-

Dutch Shell Company. Summit signed certain franchise agreements with Shell, which imposed a duty on Summit to name Shell as an additional insured under Summit's liability policy.

¶ 4    Zablocki's complaint, filed September 1, 2009, alleged the following. On September 4, 2007, Zablocki stopped at Summit to purchase grocery items. Simultaneously, an employee of A.D. Connor was transferring fuel from its transport truck to underground fuel tanks at the station. This filling process released flammable gasoline vapors into the air. Immediately upon exiting the store, Zablocki walked into a public alley behind the station to smoke a cigarette. When he attempted to light the cigarette, the small flame ignited the vapors, causing an explosion that injured Zablocki.

¶ 5    Zablocki alleged in his complaint that Summit and Shell "alternatively or simultaneously owned and/or operated" the filling station. Count I alleged negligence against Summit. Counts II and III alleged negligence against the Shell companies separately, each of which he claimed "owned, operated and controlled the premises." The alleged acts of negligence against each defendant were identical. We set them out in full.

"Notwithstanding said duty as aforesaid, the defendant was guilty of one or more of the following negligent and careless acts:

A) Failed to ventilate the accumulated fumes through the use of [a] system to disperse the fumes into the air to a level which would not provide a risk of explosion to those on or about the premise grounds.

B) Continued to use appliances, conduit fixtures, pipes or vents for the dispersion of gas fumes, although it knew or, in the exercise of reasonable care should have known that they were in disrepair and not effective in dispersing said fumes.

C) Failed to post warning signs that there was a risk that said fumes could accumulate in the areas in which plaintiff was on or about the premises.

D) Failed to inspect and test the area where plaintiff was on or about the premises to determine the existence of the fumes that accumulated to explosive or combustive levels."

¶ 6    In its complaint for declaratory judgment, filed on January 21, 2010, Pekin claimed its insurance policy extended coverage to Shell for negligence in the granting of a franchise and to claims of vicarious liability. The Zablocki complaint did not allege that the Shell defendants were vicariously liable for Zablocki's injuries; nor did the complaint allege any fault by Shell in granting a franchise to Summit.

¶ 7    On June 14, 2007, Summit procured the Pekin policy as the named insured with an effective date of July 1, 2007. In accordance with certain franchise agreements, Summit listed Shell as "additional insured" to the Pekin policy. Under the "Optional Coverage" of the policy's "Businessowners Supplemental Declarations," there are two entries for the additional insured, each of which modifies the "Who is an Insured" clause of the policy. The first is listed as "Additional Ins - Grantors of Fran," with the premium listed for the coverage. The second is listed as "Additional Insured - Flat Charge," which lists a separate premium for the coverage. The first endorsement provides, "The person or organization shown in the schedule [is an insured], but only with respect to their liability as grantor of a franchise to

you." The second endorsement amends the policy to reflect the following.

"WHO IS AN INSURED (Section C) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations and premises owned by or rented by you."

¶ 8 After hearing argument on Pekin's motion for summary judgment in its declaratory action, with a written response by Shell, with certain franchise agreements between Summit and Shell attached, the circuit court denied summary judgment to Pekin. Instead, on oral motion from Shell, the court granted judgment as a matter of law to Shell, holding that Pekin had a duty to defend. The court reasoned that "the allegations of simultaneous ownership, being incorporated into all applicable counts, triggered Pekin's duty to defend [the Shell defendants] as additional insureds." Pekin timely appealed.

¶ 9                                     ANALYSIS

¶ 10 Pekin asserts the circuit court erred as a matter of law in granting judgment to Shell because its duty to Shell as an additional insured under the policy was not triggered by the Zablocki action. Pekin claims the policy covers actions that allege negligence in the granting of the franchise by Shell under the first endorsement. Additionally, Pekin argues the second endorsement of July 1, 2007, affords coverage only for vicarious liability based on the "arising out of" language, which the Zablocki action did not allege as the basis for his claims against Shell. As an evidentiary issue, Pekin argues that the agreements Summit and Shell signed, which Shell attached to its response to Pekin's motion for summary judgment, are impermissible parole evidence, which renders them inadmissible on the issue of duty to defend as the insurance contract is not ambiguous. Pekin asserts that our review of whether a duty to defend has been triggered should be limited to the comparison of the allegations in Zablocki's complaint to the provisions of the Pekin policy.

¶ 11                          Summary Judgment Review

¶ 12 "The same standard for the grant of summary judgment applies in a case involving a duty to defend claim: 'Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' " *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009) (quoting *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007)). Our review is *de novo*. *Id.*

¶ 13                                Duty to Defend

¶ 14 To determine whether an insurer has a duty to defend an action against an insured, generally, we compare the allegations of the underlying complaint to the relevant portions of the insurance policy. *Fisher Development*, 391 Ill. App. 3d at 525. "If the complaint alleges facts that fall within or potentially within the coverage of the policy, 'the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent.' " *Id.* (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64,

73 (1991)). Where the insurer rejects a tender of defense based on a provision that it contends excludes coverage, we review the applicability of that provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage." *Id.* (quoting *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560 (2000)).

¶ 15                                   *"Grantor of a Franchise" Provision*

¶ 16        We first address Pekin's argument that coverage under the policy for Shell as the "additional insured" is limited to actions alleging "the Shell companies were negligent in granting a franchise," as Pekin asserts in its main brief. Pekin cites *Tennessen v. Commercial Union Insurance Co.*, No. 95-3411, 1997 WL 91270 (Wis. Ct. App. Mar. 5, 1997) (*per curiam*), as its only authority for its position that coverage is limited by the first endorsement. Pekin explains the absence of authority in our state interpreting this provision is simply one of opportunity: "Illinois has yet to address the 'Grantor of Franchise' endorsement."

¶ 17        In *Tennessen*, a passenger in a vehicle was injured in a collision. *Id*. at *1. The passenger claimed that a convenience store, operating as an "Open Pantry" store, unlawfully sold alcohol to the underage driver, which caused her to become intoxicated. *Id.* The Open Pantry corporate entity granted the franchise to Goldmine Corporation, which operated the actual store. *Id.* The passenger sued both Open Pantry and Goldmine to recover damages for her injuries. *Id.*

¶ 18        Threshermens Mutual Insurance Company insured Goldmine, with Open Pantry listed as an additional insured. *Id.* The policy covered Open Pantry but " 'only with respect to their liability as grantor of a franchise' to Goldmine." *Id.* The Wisconsin court held that no coverage was provided by the Threshermens policy because the complaint did not implicate Open Pantry's role as grantor of a franchise. *Id.* at *2. We quote the court's reasoning in its entirety: "Open Pantry was only an additional insured on the Threshermens policy. Open Pantry was not insured by Threshermens for all liability but only for liability as a 'grantor of a franchise.' There was no allegation in the amended complaint regarding negligence in the granting of the franchise." *Id.*

¶ 19        Illinois courts construe an insurance policy by considering "the policy as a whole, the risk undertaken, the subject matter and the purpose of the contract." *American Family Mutual Insurance Co.*, 391 Ill. App. 3d at 525. "If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning*. [Citation.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citations] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." (Emphasis in original.) *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992). "This is so because there is little or no bargaining involved in the insurance contracting process [citation], the insurer has control in the drafting process, and the policy's overall purpose is to provide coverage to the insured [citation]." *Id.* at 119. "Only where the complaint allegations clearly exceed policy coverage may an insurer justifiably refuse to defend." *U.S. Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill. App. 3d 378, 384 (1989).

¶ 20     As we stated, there are two endorsements for optional coverage, which purport to provide coverage to the additional insured under the Pekin policy. The existence of these two endorsements for additional-insured coverage necessarily means that the "Grantors of Fran" endorsement does not provide the only coverage to Shell, as the additional insured. While the "Grantors of Fran" endorsement appears to limit coverage as Pekin claims to negligence arising from the awarding of a franchise, Pekin does not, and cannot, argue that either coverage exists for Shell under that endorsement or it does not exist at all. Plainly, Shell is also listed as additional insured under the second endorsement. Thus, it cannot be that the first endorsement limits coverage under the entire policy as Pekin contends to "negligence in granting a franchise" in light of the second endorsement. If the first endorsement limited coverage to only instances of negligence in granting a franchise, it would render meaningless the coverage provided by the second endorsement. "[A]ny ambiguities arising when several provisions of the policy are read together will be construed in favor of the insured." *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 153 (1984).

¶ 21     In light of the second endorsement providing for coverage to Shell as additional insured, the "grantor of franchise" endorsement does not limit coverage under the Pekin policy to Shell in its "capacity as franchisor *** to Summit," as Pekin contends. As a consequence, this case does not call upon us to address the scope of the coverage provided under the "grantor of franchise" endorsement. At the very least, the existence of the second endorsement renders *Tennessen* inapposite.

¶ 22                    *"Liability Arising Out of" Provision*

¶ 23     Pekin contends the second endorsement, which provides that Shell is an insured "only with respect to liability arising out of [Summit's] operations and [its] premises," limits coverage to allegations of vicarious liability of Shell for the negligence of Summit. Pekin argues that counts II and III, which alleged that the Shell defendants separately "owned, operated and controlled the premises," allege "direct liability against the Shell Defendants arising out of their own negligent operation, ownership or control of the filling station," as Pekin claims in its main brief. Premised on this, Pekin contends no duty to defend under the policy's "vicarious liability" coverage was triggered.

¶ 24     As affirmative authority, Pekin cites three cases in which this court determined that the Pekin policies under consideration covered only vicarious liability: *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294, 297 (2007) (the homeowner did not qualify as an additional insured to trigger a duty to defend because the allegations of the underlying complaint were not limited to "acts or omissions of the named insured, but also were predicated on the additional insured's alleged independent acts of negligence"); *Pekin Insurance Co. v. United Parcel Service, Inc.*, 381 Ill. App. 3d 98, 104 (2008) ("Since negligence has been directly alleged against UPS, UPS is not covered by the additional insured provision in the Pekin policy."); and *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1064 (2010) ("the facts alleged in this complaint [fail to] allege an agency relationship between [the additional insured] and [the named insured]"). The "Who is an Insured" clause at issue in

-6-

each of the three cases was identical; each policy provided coverage to "an additional insured only with respect to liability incurred *solely* as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation." (Emphasis added.) (Internal quotation marks omitted.) *Beu*, 376 Ill. App. 3d at 294-95; *United Parcel Service*, 381 Ill. App. 3d at 100; *Roszak*, 402 Ill. App. 3d at 1058.

¶ 25    The "Who is an Insured" clause in the instant case is not identical to the language in the same clause at issue in the three cases Pekin relies upon. To paraphrase this court from *United Parcel Service*, Pekin nevertheless argues that the "Who is an Insured" clause under the policy at issue should be construed identically to the "solely as a result of" clause at issue in the three cases, but "without explaining how the language in Pekin's additional insured endorsement [in the instant case] is amenable to that conclusion." *United Parcel Service*, 381 Ill. App. 3d at 108. To paraphrase further, "The key difference *** is that the additional insured endorsement in [the instant case] is much broader than the one at issue [in *United Parcel Service*]." *Id.* It follows from the distinct clause in the Pekin policy before us that the question of law we address in this case, as to coverage provided to Shell, is not answered by the three Pekin cases referenced above, which turned on coverage extended to an additional insured "with respect to liability incurred *solely* as a result of" the negligence of the named insured. See *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 348 (2010) ("because each of those cases [including *Beu* and *United Parcel Service*] is distinguishable from the instant case, we decline to follow them in this case").

¶ 26    The cited case that did not go Pekin's way on the duty to defend issue, Pekin contends, is helpful here but only by distinction: "Unlike in *Pulte* [*Home*], Summit has not made admissions which make it possible or even likely that Summit will be found solely liable to Zablocki. Summit has not admitted it was in the business of selling gasoline, grocery and convenience products to members of the public, that it entered into a contract with Shell Defendants to operate or own the filling station, that its liabilities and duties arose in part from that contract, or that it owned or operated the station when the explosion occurred." In fact, the franchise agreements attached to Shell's response to Pekin's summary judgment motion address many of the questions that Pekin contends distinguish this case from *Pulte Home*, agreements which Pekin nevertheless contends should not be considered by this court.

¶ 27    In *Pulte Home*, this court called into question the limitation expressed in the *Roszak* opinion to restrict review of the duty-to-defend issue to the comparison of the underlying complaint with the terms of the policy. "[The *Roszak* court's] analysis runs counter to our supreme court's decision in [*Pekin Insurance Co. v.*] *Wilson*, 237 Ill. 2d 446 [(2010)], which held that 'a circuit court may, under certain circumstances, look beyond the underlying complaint in order to determine an insurer's duty to defend.' " *Pulte Home*, 404 Ill. App. 3d at 341 (quoting *Wilson*, 237 Ill. 2d at 459).

¶ 28    In construing an insurance policy, Illinois courts look to "the risk undertaken, the subject matter and the purpose of the contract." *American Family Mutual Insurance Co.*, 391 Ill. App. 3d at 525. It follows that a circuit court ought not ignore the agreements that serve to drive the named insured to purchase the liability policy naming the other party as an additional insured, in assessing the risk undertaken and the subject matter and purpose of the insurance contract. See *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App.

3d 1017, 1032 (2008) ("the trial court need not wear judicial blinders and may look beyond the complaint at other evidence appropriate to a motion for summary judgment" (internal quotation marks omitted)). Here as well, we conclude that it was appropriate for the circuit court "to examine evidence beyond that contained in the underlying complaint in determining the duty to defend." *Wilson*, 237 Ill. 2d at 462.

¶ 29    In *Wilson*, our supreme court expressly rejected the assertion by appellant Pekin Insurance Co. that precedent of the court established a rule "that a trial court must look solely to the underlying complaint and the applicable policy provisions to determine whether there is a duty to defend." *Id.* at 456. The court made clear "that such a limited interpretation was not intended" by its earlier decision. *Id.* In addition to *Holabird & Root*, the court quoted with approval the appellate court's decision in *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983):

> " 'To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.' " (Emphasis omitted.) *Wilson*, 237 Ill. 2d at 461 (quoting *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 305).

It seems likely that the contract that compels a named insured to add other parties to its liability policy will inform the circuit court's decision on the nature of the coverage the purchased policy was meant to provide to the additional insured. " 'An insurance policy is not intended to be interpreted in a factual vacuum and without regard to the purpose for which the insurance policy was written.' " *Pulte Home*, 404 Ill. App. 3d at 343 (quoting *Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.*, 287 Ill. App. 3d 741, 744 (1997)).

¶ 30    We are also unpersuaded by the reason offered by Pekin to bar consideration of other evidence in this case. Pekin argues that consideration of the franchise agreements Shell relied on to challenge Pekin's motion for summary judgment may "tend to determine an issue critical to the underlying litigation" involving Zablocki as to whether the named insured or the additional insureds "owned, operated or controlled the filling station." The circuit court made no such determination; nor has this court. See *Canal Insurance v. A&R Transportation & Warehouse, LLC*, 357 Ill. App. 3d 305, 312 (2005) (the court rejected the appellant's contention that the proposed finding "in the context of this declaratory judgment action is inappropriate as it will be binding upon him in the underlying action"). The franchise agreements attached to the filed responses by Shell to Pekin's motion for summary judgment, to which Pekin did not object or successfully move to strike, were properly considered only to determine coverage under the endorsement "and for no other purpose." *Id.* In fact, were we to preclude the circuit court from considering the agreements that compelled the additional-insured coverage, it may well spur litigation between the additional insured and the named insured over whether the contracted-for insurance was procured. See *Patrick Engineering, Inc. v. Old Republic General Insurance Co.*, 2012 IL App (2d) 111111, ¶ 6 n.1 ("third-party complaint [filed] against Patrick in the underlying litigation, alleging, among other claims, that Patrick[, as the named insured,] breached its agreement with ComEd[, as the purported additional insured,] by failing to procure the appropriate insurance").

¶ 31    The franchise agreements, as the driving force behind Summit's procurement of the Pekin policy, reinforce our decision that Pekin had a duty to defend Shell. Resolution of the duty to defend issue, as the *Pulte Home* court intimated, should not turn on the absence of allegations of vicarious liability when the allegations in the complaint do not "preclude the possibility that [the additional insured] could be found liable solely as a result of the acts or omissions of *** the named insured." *Pulte Home*, 404 Ill. App. 3d at 342. There are of course duty-to-defend cases where the allegations in the underlying complaint sufficiently demonstrate *sole* negligence by the additional insured to exclude coverage. See, *e.g.*, *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill. App. 3d 312, 319-20 (2009) (the underlying complaint alleged that an employee of the general contractor " 'moved a section of the roof's support causing the roof deck on which the Plaintiff was working to fall,' " which demonstrated the accident was due to the sole negligence of the general contractor and precluded a duty to defend from arising on the part of the subcontractor's insurer). The instant case is not such a case.

¶ 32    Moreover, we are aware of no authority that converts the insurer's burden to demonstrate that the allegations in the underlying complaint do not potentially fall within the coverage of the policy (*Roszak*, 402 Ill. App. 3d at 1059) to one where the additional insured must demonstrate that the allegations in the underlying complaint fall within the coverage of the policy. In *Pulte Home*, we rejected Pekin's contention that no duty to defend arose unless the additional insured could point to allegations in the underlying complaint that the "*sole* basis" for the additional insured's liability was the named insured's negligence. *Pulte Home*, 404 Ill. App. 3d at 342.

¶ 33    Accordingly, we reject Pekin's implicit contention that in the context of this case, only if the allegations of the underlying complaint support a claim of vicarious liability can we find a duty to defend owed by Pekin. As we stated above, the burden is on Pekin to demonstrate that the allegations in the underlying complaint do not potentially fall within the coverage of the policy. *Roszak*, 402 Ill. App. 3d at 1059. See *Pulte Home*, 404 Ill. App. 3d at 344 ("A finding as to whether Pulte was solely liable will not be made until after a trial has been held and a determination of liability has been made."). The three cases on which Pekin relies are clearly distinguishable based on the far more specific and narrower language in the "Who is an Insured" clause than in the same clause in the policy at issue here. The required showing to foreclose a duty to defend has not been made here by Pekin. "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis omitted.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991).

¶ 34    Finally, we agree with Shell that there is an inherent contradiction between Pekin's claim that Shell was provided insurance coverage for "negligence in granting a franchise" to Summit, as provided in the first endorsement, and the second endorsement, which, in the words of Pekin's main brief, covered "liability arising out of Summit's operations or premises owned or rented by Summit, not for Shell's own negligence." Pekin fails to explain how the coverage provided by second endorsement is reconciled with the coverage provided by the first endorsement. The two endorsements when read together are ambiguous and will

be construed in favor of Shell. *Maryland Casualty Co.*, 126 Ill. App. 3d at 153 ("any ambiguities arising when several provisions of the policy are read together will be construed in favor of the insured"). Neither endorsement foreclosed Pekin's duty to defend Shell as an additional insured.

¶ 35                                                   CONCLUSION

¶ 36        The two endorsements in the Pekin policy extending coverage to the Shell defendants as additional insured "with respect to their liability as grantor of a franchise" and for "liability arising out of [the named insured's] operations" are ambiguous when read together and are construed against Pekin as the issuer of the policy. Pekin has failed to demonstrate that the allegations of the Zablocki action do not fall potentially within the Pekin policy's coverage. Absent such a showing, Pekin has a duty to defend the Shell defendants.

¶ 37        Affirmed.

¶ 38        JUSTICE R. GORDON, specially concurring.

¶ 39        I concur in the majority's holding that plaintiff Pekin Insurance Company has a duty to defend. However, I must write separately because I believe, with all due respect, that the majority strays too far from the allegations of the complaint and too far down the road of deciding the ultimate question of coverage. Thus, I must specially concur.

¶ 40        In Illinois, the duty to defend and the duty to indemnify are not coextensive. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 366 (1988). The obligation to defend is much broader than the obligation to pay. *International Minerals*, 168 Ill. App. 3d at 366.

¶ 41        To determine whether an insurer has a duty to defend, a court must look to the allegations in the underlying complaint and then compare them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). If the facts alleged in the underlying complaint fall potentially within the policy's coverage, then the insurer has a duty to defend. *Outboard Marine*, 154 Ill. 2d at 108.

¶ 42        Only if it is clear from the face of the complaint that the allegations fail to state facts that could bring the case potentially within the policy's coverage, then the insurer may properly refuse to defend. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993) (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)).

¶ 43        Where the language of an insurance policy is clear and unambiguous, we will apply it as written. *Hatherley*, 250 Ill. App. 3d at 337. However, where an insurer relies on an exclusionary clause to deny coverage, "its applicability must be clear and free from doubt" and "any doubts as to coverage will be resolved in favor of the insured." *International Minerals*, 168 Ill. App. 3d at 367. The construction of an insurance policy presents a question of law that we review *de novo*. *Outboard Marine*, 154 Ill. 2d at 108.

¶ 44        In the case at bar, defendant Pekin argues that an endorsement to the policy limits the

-10-

policy's coverage to: (1) negligence in Shell's granting of the franchise; and (2) Shell's vicarious liability for the franchisor. Pekin claims that, since the underlying action did not allege either (1) negligence in the granting of the franchise or (2) vicarious liability against Shell, Pekin, therefore, had no duty to defend.

¶ 45     In the underlying action, the complaint alleged that Waldemar Zablocki was injured in an explosion at a gas station that was "alternatively or simultaneously owned and/or operated" by Summit and Shell. Specifically, the complaint alleged that an employee of A.D. Connor was transferring fuel from its transport truck to an underground fuel tank at the station and that this process released flammable vapors into the air. After Zablocki exited the station's store, he walked into a public alley behind the station and started to light a cigarette. The spark ignited the vapors, which caused the explosion that injured Zablocki. Count I of the Zablocki complaint alleged negligence against Summit, while counts II and III alleged negligence against Shell which, Zablocki claimed, "owned, operated and controlled the premises."

¶ 46     I find that the complaint's allegations of control against Shell are sufficient to trigger a potential for vicarious liability by Shell and, thus, are sufficient to trigger Pekin's duty to defend.

¶ 47     Control is the key element of vicarious liability. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 44 (control is the "cardinal consideration" (internal quotation marks omitted)). Recently, our supreme court set forth a comprehensive discussion of vicarious liability in *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶¶ 42-44. In *Lawlor*, our supreme court explained that, generally, a person injured by the tortious action of another must seek a remedy from the person who actually caused the injury. *Lawlor*, 2012 IL 112530, ¶ 42. However, if vicarious liability exists, a principal may be held liable for the toritous actions of an agent, even if the principal itself did not engage in the conduct. *Lawlor*, 2012 IL 112530, ¶ 42. As a general rule, no vicarious liability exists for the actions of independent contractors. *Lawlor*, 2012 IL 112530, ¶ 42. An independent contractor is one who agrees to produce a certain result but who, during the actual execution of the work, is not under the control of the person for whom the work is done. *Lawlor*, 2012 IL 112530, ¶ 43. An independent contractor may use his or her own discretion in matters that were not specified or in the details of the work. *Lawlor*, 2012 IL 112530, ¶ 43. However, just because someone is an independent contractor will not bar vicarious liability, if he or she is also an agent of the principal. *Lawlor*, 2012 IL 112530, ¶ 43. There is no precise formula for determining when a person's status as an independent contractor is negated by his or her status as an agent. *Lawlor*, 2012 IL 112530, ¶ 44.

¶ 48     The determination of whether a person is an agent or an independent contractor rests upon the facts and circumstances of each case. *Lawlor*, 2012 IL 112530, ¶ 44. However, the "cardinal consideration is whether that person retains the right to control the manner of doing the work." *Lawlor*, 2012 IL 112530, ¶ 43.

¶ 49     In the case at bar, the complaint alleged that Shell had "control." Since "control" is the key element of vicarious liability, I would find that the factual allegations of the complaint triggered Pekin's duty to defend, even though the complaint does not allege vicarious

-11-

liability. For these reasons, I must specially concur.