# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735**

---

| | |
|---|---|
| Appellate Court Caption | ILLINOIS EMCASCO INSURANCE COMPANY, Plaintiff-Appellant, v. WAUKEGAN STEEL SALES INC., a Corporation, and JOHN WALLS, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0735 |
| Filed | September 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a declaratory judgment action seeking a determination that plaintiff insurer was not obligated to defend defendant steel company as an additional insured under the policy obtained by a subcontractor in an underlying action for the injuries suffered by one of the subcontractor's employees, the trial court properly entered summary judgment for the steel company, since an examination of the subcontract showed that the parties intended that the steel company would be potentially exposed to vicarious liability that would be covered under the subcontractor's policy, and the third-party complaints in the underlying action alleged that the subcontractor's negligence was the cause of its employee's injuries, thereby raising the possibility that the steel company was vicariously liable for that negligence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-46757; the Hon. Sophia Hall, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Keith Carlson, of Carlson Law Offices, of Chicago, for appellant.

William Busse, Jr., and Jason E. DeVore, both of Busse, Busse & Grasse, P.C., of Chicago, for appellees.

Panel

JUSTICE TAYLOR delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Illinois Emcasco Insurance Company (Emcasco) filed a declaratory judgment action in November 2009 asking the trial court to declare that it had no duty to defend defendant Waukegan Steel Sales, Inc. (Waukegan), in the underlying personal injury suit filed by an employee of Waukegan's subcontractor. Emcasco argued that the complaint alleged only direct negligence on the part of Waukegan, which was outside the scope of Waukegan's coverage as an additional insured on its subcontractor's policy with Emcasco.

¶ 2    Waukegan filed a counterclaim seeking declaratory judgment that Emcasco had a duty to defend. The trial court granted summary judgment in October 2011 for Waukegan, finding that Emcasco had a duty to defend Waukegan in the underlying personal injury lawsuit. Emcasco subsequently filed this appeal challenging the trial court's finding. For the reasons that follow, we affirm the judgment of the trial court.

¶ 3                                    BACKGROUND

¶ 4    On June 15, 2009, Waukegan sent Emcasco a letter tendering the defense and indemnity in relation to the underlying lawsuit filed by John Walls (Walls) against Waukegan for injuries he sustained in October 2007 while working for I-MAXX Metalworks, Inc. (I-MAXX), on the Minooka High School construction site. Walls was injured when a stair stringer and/or perimeter cable protection failed, which caused him to fall while he was working in his capacity as an I-MAXX employee. In March 2009, Walls filed an amended complaint asserting one count against Waukegan alleging that he was injured due to Waukegan's negligence in failing to properly manage, operate, and maintain the premises, not performing reasonable inspections, failing to provide a safe workplace, and failing to have or maintain proper fall protection among others.

¶ 5    Waukegan's letter referenced the subcontract agreement that Waukegan and I-MAXX entered into May 2007. That subcontract agreement provides:

"I-MAXX is solely responsible for the means, methods and safety of its employees

while on the jobsite. Waukegan assumes no liability for the supervision of erectors men and equipment. I-MAXX is to provide a competent supervisor while performing their work. This project will require multiple mobilizations."

The contract also required I-MAXX to obtain and maintain insurance under which Waukegan would be a covered as an additional insured for bodily injury, property damage or personal and advertising injuries caused by I-MAXX's acts or omissions. Emcasco was the provider of the insurance obtained by I-MAXX. The policy provides coverage for an additional insured "with respect to operations performed under or incident to this contract." The policy also included a blanket additional insured endorsement, which states, in relevant part:

"[Waukegan] is an additional insured only with respect to liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused, in whole, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in performance of your ongoing operations for the additional insured."

The endorsement further states:

"This insurance does not apply to:

1. Bodily injury, property damage or personal and advertising injury resulting from any act or omission by, or willful misconduct of the additional insured, whether the sole or a contribution cause of the loss. *The coverage afforded to the additional insured is limited solely to the additional insured's vicarious liability that is a specific and direct result of your conduct.*

Vicarious liability as used in this endorsement means liability that is imposed on the additional insured *solely by virtue of its relationship with you*, and not due to any act or omission of the additional insured." (Emphases added.)

Under this provision, Waukegan argued in the tendered defense letter that Emcasco had a duty to defend and indemnify Waukegan on a primary, noncontributory basis in the Walls complaint.

¶ 6    On August 21, 2009, Emcasco sent a letter response denying Waukegan's request to tender defense. Emcasco stated that although Waukegan otherwise met the requirements to be covered by the additional insured provision, the facts of the situation, particularly the allegations of direct negligence on Waukegan's part, were excluded from coverage by the vicarious liability provision in the policy. Specifically, Emcasco indicated that the Walls complaint's allegations that Waukegan itself failed to make reasonable inspection of the premises, improperly managed, operated or maintained the premises, failed to provide a safe place within which to work, failed to provide proper support for stringer and allowed work to proceed without a safe, suitable and proper perimeter cable system for fall protection were not attributable to I-MAXX and were therefore outside the scope of the policy. On November 20, 2009, Emcasco then filed the instant action seeking a declaratory judgment that the policy did not provide coverage due to the exclusion contained in the additional insured clause.

¶ 7    The Walls complaint also contained one count, essentially identical to the count against Waukegan, against both Turner Construction Company (Turner) and Frontier Construction,

Inc. (Frontier). Individually, Turner and Frontier filed third-party complaints against I-MAXX alleging that I-MAXX's acts or omissions were either the direct and proximate cause of or contributed to Walls' injuries. Both third-party complaints allege that I-MAXX failed to:

"make a reasonable inspection of the premises and the work being done, properly operate, manage, maintain and control the premises, provide a safe workplace, warn of dangerous conditions then existing, provide adequate safeguards to prevent injury, supervise the work being done, provide safe, suitable and proper perimeter cable system for fall protection, provide proper support for stringers, design and/or fabricate shelve lugs for the stair stringer and additional stairways, properly disallow and/or stop work with improper design and/or fabrication of shelve lugs, properly disallow and/or stop work without a safe, suitable and proper perimeter cable system for fall protection, and properly erect, disallow or stop work with an improper perimeter cable."

Waukegan was not a party to these third-party complaints. In August 2010, Turner previously filed jointly with Waukegan in the initial motion for summary judgment on Emcasco's declaratory judgment action with their respective counterclaims of vicarious liability for the actions of I-MAXX and asserting Emcasco's duty to defend, but it withdrew from the declaratory judgment action shortly thereafter. The trial court reviewed the cross-motions for declaratory judgment.

¶ 8    On October 7, 2011, the trial court entered an order granting summary judgment for Waukegan, concluding that where there is a possibility that at least one allegation is potentially covered by an insurance policy, their insurer has a duty to defend the insured, and since the injury took place at the worksite of the named insured, I-MAXX, it found that it arose out of I-MAXX's operations. The trial court further determined that a duty to defend could be derived from the third-party complaints filed by Turner and Frontier, since they alleged direct negligence on the part of I-MAXX. The trial court granted declaratory judgment in favor of Waukegan; plaintiff Emcasco filed this timely appeal.

¶ 9                                    ANALYSIS

¶ 10    Plaintiff contends on appeal that the trial court erred in finding that it had a duty to defend Waukegan because the underlying complaint failed to allege facts of vicarious liability as required for the insurance policy to be activated, and the court should not have reviewed the third-party complaints to determine the applicability of the policy.

¶ 11    "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court [to decide and] are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). Where the

parties file " 'cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law.' " *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339 (2005).

¶ 12        In determining an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaint. " 'If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent.' " *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 340 (2010) (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)). A court compares the allegations in the underlying complaint to the relevant provisions of the insurance policy, and if the facts alleged fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 13        Where the insurer rejects a tender of defense based on a provision that it contends excludes coverage, we review the applicability of that provision to ensure it is " ' "clear and free from doubt" that the policy's exclusion prevents coverage.' " *Pekin Insurance Co. v. Equilon Enterprises LLC*, 2012 IL App (1st) 111529, ¶ 14 (quoting *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560 (2000)). Courts take into consideration "the risk undertaken, the subject matter and the purpose of the [policy]." (Internal quotation marks omitted.) *Equilon Enterprises*, 2012 IL App (1st) 111529, ¶ 28. The policy must be given its plain and ordinary meaning when the language is unambiguous. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). The court reviews the interpretation of an insurance policy *de novo*. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998).

¶ 14        The facts of this case are not at issue; on appeal, the sufficiency of the underlying complaint on its own to trigger a duty to defend is not contested. The Walls complaint alleges that Waukegan coordinated the work being done and designated various work methods, maintained and checked work progress, participated in the scheduling and inspection of the work, and had authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason. Direct allegations of negligence against an additional insured do not fall within coverage granted " ' "only with respect to liability incurred solely as a result of some act or omission of the named insured and not for [the additional insured's] own independent negligence or statutory violation." ' " *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1061 (2010) (quoting *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294, 297 (2007)). As the underlying complaint alleges liabilities against Waukegan solely for its actions or inactions, the complaint alone is not sufficient to create a duty to defend. However, the inquiry cannot stop there.

¶ 15        A trial court is not limited to the allegations in the complaint in determining whether an insurer has a duty to defend. *Pulte*, 404 Ill. App. 3d at 340. Our supreme court in *Wilson* declined to "limit the source of an insurer's duty to defend 'solely' to the content of the underlying complaint in all cases." *Wilson*, 237 Ill. 2d at 458. In certain circumstances, a court can review the contract and third-party complaints to determine the insurer's duty to defend. *Id.* at 459. Requiring the trial court "look solely to the complaint in the underlying

-5-

action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983). The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit. *Id.* at 305.

¶ 16    Emcasco contends that the trial court's review of the third-party complaints to determine whether Emcasco had a duty to defend was improper. Emcasco relies on *Roszak*, 402 Ill. App. 3d at 1067, arguing that the underlying facts of this case are most similar to *Roszak* and the court is thereby bound by the allegations within the complaint. In the underlying suit in *Roszak*, a worker filed suit against Roszak, the general contractor, and Rockford, the subcontractor, for injuries sustained while employed by Area Erectors and working on their construction project. *Roszak*, 402 Ill. App. 3d at 1056. Under Rockford's insurance policy with Pekin, Roszak was named as an additional insured for vicarious liability only. *Id.* at 1058. Pekin refused to defend when Roszak tendered the complaint. The appellate court reversed the trial court's holding in favor of Roszak, concluding that they were bound to the allegations in the complaint which failed to raise the possibility that Roszak could be found vicariously liable for Rockford's actions and, as such, Pekin had no duty to defend. *Id.* at 1067. However, here, unlike in *Roszak*, there are third-party complaints which provide a basis for Waukegan being liable solely on the basis of I-MAXX's liability.

¶ 17    Emcasco seeks to restrict the ability of the court to review such additional documents by focusing on the phrase "unusual and compelling" as used in *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 35 (1987), but rejected in *National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc.*, 329 Ill. App. 3d 228, 238 (2002). However, our supreme court in *Wilson*, 237 Ill. 2d at 458-59, followed Illinois cases which did not require such circumstances and did not limit a court's review only to the underlying complaint. *Olson Construction*, 329 Ill. App. 3d 228; accord *L.J. Dodd Construction, Inc. v. Federated Mutual Insurance Co.*, 365 Ill. App. 3d 260, 262 (2006). Furthermore, the First District has not followed *Zurich* in restricting review of third-party complaints to situations where there are unusual and compelling circumstances. In neither *Pulte*, 404 Ill. App. 3d 336, nor *Roszak*, 402 Ill. App. 3d 1055, did the court's decision rest upon whether the situation was so unusual and compelling as to require the court to look at additional material. Thus, *Zurich*, if applied in a situation such as this, would run contrary to our supreme court's decision in *Wilson* as well as our decisions in *Pulte* and *Roszak*. Furthermore, Emcasco's comparison of this case to *Beu*, 376 Ill. App. 3d 294, and *Pekin Insurance Co. v. United Parcel Service, Inc.*, 381 Ill. App. 3d 98 (2008), is unavailing as these two cases also had no third-party complaints for the courts to review in their determinations, and as such, the court was properly bound by the allegation pled.

¶ 18    Rather, the case at hand is more analogous to the facts in *Pulte*. Although Emcasco attempts to characterize the additional insured policy in the present case as more narrow than the one in *Pulte*, the facts are similar. In *Pulte*, the general contractor, Pulte, was an additional insured under a policy held by Kunde Construction. The policy provided coverage for an additional insured "only with respect to liability incurred solely as a result of some act

or omission of the named insured and not for its own independent negligence or statutory violation." *Pulte*, 404 Ill. App. 3d at 338. The court found that although the underlying complaint alleged direct negligence, the third-party complaints provided additional allegations which showed that the additional insured could have been found negligent solely due to the actions of the primary insured. *Id.* The court also reviewed *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017 (2008), in making its decision. *Holabird & Root* granted reviewing courts large latitude to consider third-party complaints in the interest of "settling and fixing the rights of the parties." (Internal quotation marks omitted.) *Id.* at 1032. Evidence beyond the underlying complaint, including third-party complaints which are the subject of the issue here, may be examined as long as the court does not determine an issue critical to the underlying action. *Id.* at 1031; see also *Envirodyne Engineers*, 122 Ill. App. 3d at 305. The court in *Pulte* upheld the trial court's ruling, finding a duty to defend existed. Here, as in *Pulte* and *Holabird & Root*, the third-party complaints were reviewed solely to determine whether there was a possibility that I-MAXX could have been at fault for the injuries Walls sustained.

¶ 19    Emcasco also argues that, due to the timing of Turner's third-party complaint, it should not have been reviewed. In doing so, it cites *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill. App. 3d 312 (2009), where the court declined to review a third-party complaint in connection with a declaratory judgment action where the insurer's duty to defend was at issue. However, *Walsh* is inapposite. The *Walsh* court declined to review a third-party complaint when it was issued by the party who was seeking the declaratory judgment. *Id.* at 322. The court there stated that the third-party complaint only served as self-serving statements which would offer nothing that could not have been provided in the declaratory judgment action. *Id.* (citing *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172 (2008)). That is not the case here. Waukegan is not relying on a third-party complaint which was written by it and used to bolster its position. Instead, Waukegan is relying on complaints fashioned by other parties against I-MAXX. Both third-party complaints include allegations of fault by I-MAXX as the underlying cause of Walls' injuries. Those allegations make this case analogous to *Holabird & Root*, and, as such, the third-party complaints can be reviewed to determine Emcasco's obligation to defend Waukegan.

¶ 20    Emcasco's next contention is that the third-party complaints are insufficient to support a duty to defend because both parties are seeking contribution for the negligent actions of I-MAXX. Emcasco argues that because both third-party complaints alternatively allege a possibility that I-MAXX might only be partially liable for Walls' injuries, that is insufficient to support Waukegan's claim. We disagree. The allegations of the complaint only need to raise the *potential* for the allegations to fall into the ambit of the insurance policy. *Equilon Enterprises*, 2012 IL App (1st) 111529, ¶ 14. The contract between Waukegan and I-MAXX demonstrates the intent of both parties to limit the liability of Waukegan in relation to I-MAXX employees and equipment. Both third-party complaints allege I-MAXX's liability for Walls' injuries, thus raising the potential for Waukegan to be held vicariously liable for any such negligence.

¶ 21    Finally, Emcasco asserts that because Waukegan lacked sufficient control over I-

MAXX's performance and the worksite as under section 414 of the Restatement (Second) of Torts (1965), and as discussed in *Roszak*, there can be no finding of vicarious liability so as to trigger a duty to defend. Generally, "one who employs an independent contractor is not liable for the acts or omissions of the latter." *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 313 (2004). Section 414 of the Restatement (Second) of Torts (1965) states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Emcasco contends that the court should follow the *Roszak* court's interpretation requiring more than general supervisory control "of some part of the subcontractor's work in order to be subject to vicarious liability for the subcontractor's actions." *Roszak*, 402 Ill. App. 3d at 1064.

¶ 22    Emcasco relies on section 414, comment c, of the Restatement (Second) of Torts (1965), as construed by the court in *Roszak*, in an attempt to limit Waukegan's potential right to defense. There the court determined that a "general contractor that retains the power to coordinate the order in which work is done and to stop work that is performed dangerously *** does not retain sufficient control so as to be vicariously liable for the subcontractor's negligence." *Roszak*, 402 Ill. App. 3d at 1067. The facts held solely within Walls' complaint allege facts of Waukegan's control almost identical to the allegations within *Roszak*. A key point of focus in reviewing the underlying complaints is allegations of independent negligence on the part of the additional insured. *Id.* at 1066. However, a finding of a duty to defend in this case is not inconsistent with the decisions in *Beu*, *UPS* and in *Roszak*. Although Restatement section 414 is important in determining whether an independent contractor is vicariously liable, at this juncture, the question is not whether Waukegan is vicariously liable. Rather, the issue is whether Emcasco has a duty to defend Waukegan because it could *potentially* be found vicariously liable for Walls' injuries.

¶ 23    Reading Walls' complaint in conjunction with the third-party complaints, we find that they raise the potential for vicarious liability on the part of Waukegan. Walls' complaint specifically alleges that "the Defendant [Waukegan], by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions." It then proceeds to list 12 allegations of negligence against Waukegan. The third-party complaints repeat these 12 allegations of negligence verbatim in seeking contribution from I-MAXX. That is, I-MAXX's alleged negligence is identical to that of "agents, servants and employees" of Waukegan. Taking this as a whole, it at least implies that I-MAXX may be one of those "agents, servants and employees" of Waukegan, as would expose Waukegan to vicarious liability even under the terms of section 414.

¶ 24    *Pulte* is also instructive here. The court in *Pulte* examined the facts in the underlying complaint, the agreement between the contractors and the insurance policy to determine the insurance provider's duty to defend. *Pulte*, 404 Ill. App. 3d at 342. There the court concluded that because the general contractor and the subcontractor had entered into an agreement, and the employee was working on the designated site of the subcontractor at the time of the injury, there was a possibility that the general contractor could be found vicariously liable

-8-

for the subcontractors' actions. *Id.* When the court examined the contract between the parties, it determined the facts were within the typical scenario where " 'the employee of a contractor injured in the course of his employment on a construction site sues another entity, \*\*\* who is an additional insured under his employer's liability policy.' " *Id.* at 344 (quoting *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 971 (2003)). In such situations, the court often finds " 'that the additional insured is covered because it is apparent that the worker's injury arose out of the named insured's operations, and "but for" the plaintiff's presence on the site in the service of the named insured, the accident would not have happened.' " *Id.* at 345 (quoting *American Country Insurance*, 344 Ill. App. 3d at 971).

¶ 25    When construing contracts and insurance policies, " '[t]he cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language.' " *Pulte* 404 Ill. App. 3d at 343 (quoting *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007)). The subcontract between Waukegan and I-MAXX, as in *Pulte*, demonstrates an intent of both parties that Waukegan would only be potentially exposed to vicarious liability, which would then be covered by I-MAXX's insurance policy with Emcasco. The contract provides: "Description: I-MAXX is solely responsible for the means, methods & safety of its employees while on the jobsite. [Waukegan] assumes no liability for the supervision of erectors men and equipment. I-MAXX is to provide a competent supervisor while performing their work. This project will require multiple mobilizations." The contract further required I-MAXX to secure insurance by which Waukegan would be named an additional insured for "operations performed under or incident to this contract." Also present here, as in *Pulte*, is an indemnification provision providing for I-MAXX to indemnify Waukegan "to from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from Subcontractor's work, goods, services provided." Additionally, allegations within the third-party complaints assist in determining the obligations of the insurer. Here, the two additional complaints allege negligent actions on the part of I-MAXX as the cause of the injuries Walls sustained, which raise the possibility that Waukegan may be vicariously liable for I-MAXX's actions.

¶ 26    Thus, we conclude that the trial court did not err in concluding that Emcasco has a duty to defend Waukegan. It is not clear and free from doubt that Waukegan can only be found directly liable for Walls' injuries. See *Equilon Enterprises*, 2012 IL App (1st) 111524, ¶ 19 (an insurer may only reject a tender of defense based on an exclusion if it is clear and free from doubt that the exclusion prevents coverage).

¶ 27    Affirmed.