2015 IL App (1st) 142438
No. 1-14-2438
Opinion filed December 22, 2015
Modified Upon Denial of Rehearing filed January 26, 2016

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JACOB SKOLNIK, ELIZABETH SKOLNIK, JOSHUA SKOLNIK, and WILLIAM JOHNSON, Individually and as the Special Administrator of the Estate of Haley Ellen Johnson, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Defendants-Appellants , | ) | |
| | ) | |
| v. | ) | No. 12 CH 41359 |
| | ) | |
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) | |
| | ) | The Honorable |
| | ) | Rita Mary Novak, |
| Plaintiff-Appellee. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1 The day after an evening out with friends, 21-year-old Haley Johnson died of methadone intoxication in the bedroom of defendant Joshua Skolnik, who lived at his parents' home.

¶ 2 Plaintiff Allied Property and Casualty Insurance Company insured the home under homeowners' and an umbrella personal liability policy. Both policies exclude liability for bodily injury "arising out of the use" of controlled substances; however, both policies also contain an exception clause that carves out "the legitimate use of prescription drugs by a person following the orders of a licensed physician." Skolnik's prescribed methadone was found in the bedroom

where Johnson died. Allied brought suit for a declaratory judgment regarding whether it had a duty to defend the Skolniks in a wrongful death lawsuit filed by Johnson's father.

¶ 3 The crux of this case involves whether the complaint alleges an independent injury. If the complaint alleges an injury not "arising out of" the "use of" a controlled substance, Allied has a duty to defend. We hold that the underlying complaint contains allegations within, or potentially within, the coverage of both the homeowners' and umbrella policies. Specifically, the complaint alleges Skolnik ("Skolnik" refers to Joshua) failed to request emergency medical assistance for Johnson within a reasonable period of time after knowing that she was physically incapacitated, unresponsive, or unconscious; and knowing or discovering she ingested or unknowingly consumed methadone or other illegal substances in the Skolnik home. Further, count I alleges that Skolnik refused to allow Johnson's two friends to check on, talk to, see, or render aid to Johnson on their request. These allegations of negligence, if proven, potentially could be covered under the insurance policies and, therefore, Allied has a duty to defend Skolnik in the underlying lawsuit.

¶ 4 BACKGROUND

¶ 5 The complaint contains the following factual allegations. During the evening of May 18, 2012, Johnson along with some friends gathered at a pub in Palatine. Around 11:30 p.m., Johnson and her friends met Skolnik, who bought them all drinks. Johnson's friends left the pub around 1:30 a.m., and Johnson remained with Skolnik. After Johnson had another drink that Skolnik provided, she told him that she thought "something" had been put into it, and needed assistance to walk. Skolnik took Johnson to his parents' home where they had sex in his bedroom. Skolnik had abused drugs in the past and used methadone; Skolnik's parents knew of his drug history and of the methadone in the house. Skolnik's parents heard voices in his

bedroom at 4 a.m. Around 9 a.m., Skolnik's mother checked on Skolnik and he told her that Johnson passed out in the bedroom. Between 11:30 a.m. and 1 p.m., two of Johnson's friends came to the Skolniks' home to check on her but Skolnik did not let them see her, telling them that Johnson was passed out naked in his bedroom. At 3:30 p.m., Skolnik told his parents Johnson was unconscious. Three hours later, his parents left for dinner and another six-and-a-half hours later, Skolnik pulled Johnson off his bed and called his parents who had not yet returned. He told them Johnson felt cold to the touch. The Skolniks instructed their son to dress Johnson and call 911. At 10:11 p.m., Skolnik called 911. When the police arrived at 10:14 p.m., Johnson was not breathing. She was pronounced dead at the Skolniks' home at 11:31 p.m.

¶ 6        The autopsy results indicated methadone intoxication as the cause of death. Lab tests also detected concentrations of GHB and Rohypno (both are referred to as "date-rape" drugs) in Johnson's blood. The manner of death was "undetermined."

¶ 7                                        Insurance Policies

¶ 8        Allied's homeowners' policy provided:

"**A. COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will:

1. [as amended by Endorsement HO 300IL (09-09]: Pay up to our limit of liability for the damages for which an insured is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent."

¶ 9        The relevant scope of coverage under the homeowners' policy provides:

"E. **COVERAGE E - Personal Liability and COVERAGE F – Medical Payments to Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected or Intended Injury**

   'Bodily injury' or 'property damage' which is expected or intended by an 'insured' even if the resulting 'bodily injury' or 'property damage':

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   \* \* \*

8. **Controlled Substance**

   '**Bodily injury' or 'property damage' arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However**,** this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician."

The policy defines "Occurrence" as an "accident" which results, during the policy period, in bodily injury. In addition, the policy contains a provision defining "insured" to include relatives who live in the insured's household.

¶ 10    Allied also issued a personal umbrella liability policy, which was in effect on the date of Johnson's death. This policy contains an exclusion for controlled substances:

"A.     The coverages provided by this policy do not apply to:

* * *

14. 'Bodily injury,' 'property damage' or 'personal injury' which arises out of:

* * *

c.     The use, sale, manufacture, deliver, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician."

¶ 11                              Underlying Complaint

¶ 12       Johnson's father, William Johnson, sued the Skolniks, parents and son, alleging two counts of wrongful death, two counts of liability under the Survival Statute (755 ILCS 5/27-6 (West 2010)), one count of false imprisonment, one count of civil conspiracy to restrain Johnson against her will, and one count of battery against only Skolnik for putting a "date-rape" drug in Johnson's drink while at a restaurant-bar and later having sex with her without her consent.

¶ 13       Count I of the first amended complaint alleges wrongful-death negligence in that Skolnik carelessly and improperly stored methadone, a controlled substance, in a manner he knew or should have known to be unsafe and potentially fatal, "notwithstanding the fact that some of the substances may have been legitimately prescribed by a licensed professional; negligently, carelessly, and improperly failed to store methadone in a secured and locked condition as required of authorized methadone users by the Clinic; negligently, carelessly, and improperly

failed to remove the methadone when it was not properly stored, and failed to return it to the Clinic."

¶ 14     Count I also alleges that Skolnik and his parents negligently, carelessly, and improperly failed to request emergency medical assistance for Johnson within a reasonable period of time after knowing she was physically incapacitated or unconscious or both; and knowing or discovering she ingested or unknowingly consumed methadone or other illegal substances in the Skolnik home.  Further, count I alleges that Skolnik and his parents refused to allow Johnson's two friends to check on, talk to, see, or render aid to Johnson upon their request; and that they "took affirmative actions to Johnson's detriment and acted in concert" after discovering she was "dead, unconscious, and/or unresponsive in their home."

¶ 15     The second wrongful death count alleges willful and wanton conduct in that the parents knew or recklessly disregarded the danger of having methadone in their home, and knew Johnson's condition in their son's bedroom but failed to call 911.

¶ 16     Count III alleges Skolnik gave Johnson a drink containing the date-rape drugs GHB and Rohypnol without her consent and later had nonconsensual sex with her. Counts IV and V claim damages under section 27-6 of the Survival Statute (*id*.), and alleging negligence and willful and wanton, respectively. Counts VI and VII alleges false imprisonment and civil conspiracy, respectively.

¶ 17                         Allied's Motion for Declaratory Judgment

¶ 18     Allied sought a declaratory judgment on the pleadings, asserting that the controlled substances exclusion in the homeowners' policy and the umbrella policy operated to relieve it of any duty to defend Skolnik against the underlying complaint. Allied moved for summary judgment in the declaratory judgment action; the Skolniks cross-moved for summary judgment.

¶ 19    The trial court ruled that Allied had no duty to defend because the exclusion clause operated to release Allied from the duty to defend, and the exception to the exclusion clause in the insurance policies did not apply. After this appeal was filed, Elizabeth and Jacob Skolnik were voluntarily dismissed without prejudice to reinstatement.

¶ 20                                    ANALYSIS

¶ 21                              Standard of Review

¶ 22    " 'The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court [to decide and] are appropriate subjects for disposition by way of summary judgment.' " *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735, ¶ 11 (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993)). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.]" (Internal quotation marks omitted.) *Pekin Insurance Co. v. Equilon Enterprises LLC*, 2012 IL App (1st) 111529, ¶ 12. We review *de novo* the trial court's decision on a motion for summary judgment. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 128 (2005). This same standard applies in a case involving a duty to defend a claim. *Pekin Insurance Co.*, 2012 IL App (1st) 111529, ¶ 12.

¶ 23                                  Duty to Defend

¶ 24    For Allied to have a duty to defend Skolnik in the underlying action, the allegations in the complaint must overcome the exclusionary effect of the clause in the homeowners' and the umbrella policy excepting accidents that "arise out of" the use of a controlled substance. Skolnik claims: (1) the exception to the exclusion provides coverage for the "legitimate use" of prescribed drugs should take effect because the methadone was prescribed for Skolnik but

negligently stored; (2) Skolnik's failure to summon help and his refusal to allow Johnson's friends to check her well-being were negligent acts independent of her methadone ingestion that would potentially be covered, and, therefore, Allied has a duty under both policies to defend him against these allegations. According to Allied, Johnson's ingestion of the methadone falls within the controlled substances exclusion clause and operates to release Allied from a duty to defend. As for the exception, Allied argues it has no effect because the methadone had been prescribed only for Skolnik.

¶ 25     The duty of an insurer to defend is separate from and broader than the duty to indemnify. *Westfield National Insurance Co. v. Long*, 348 Ill. App. 3d 987 (2004). "[E]ven if an insurer ultimately may not be obligated to indemnify, if the allegations in a complaint state a cause of action that gives rise to the *possibility* of recovery under the policy, the insurer's duty to defend is called into play." (Emphasis added.) *American Country Insurance Co. v. Cline*, 309 Ill. App. 3d 501, 512 (1999). If the terms of an insurance policy are susceptible to more than one meaning, they are considered ambiguous, and any doubts regarding coverage must be resolved in the insured's favor. *Maryland Casualty Co. v. Dough Management Co.,* 2015 IL App (1st) 141520, ¶ 51. See *Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.,* 166 Ill. App. 3d 550, 557 (1988) ("in general the question of whether a claim against an insured is potentially covered is so close in so many cases that the benefit of the doubt goes to the insured"). Where the underlying complaint alleges facts within or potentially within the scope of coverage, the insurer must defend its insured, even if the allegations are groundless, false, or fraudulent (*Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000)), or the probability of recovery is minimal. *Hertz Corp. v. Garrott*, 207 Ill. App. 3d 644, 648 (1990).

¶ 26    The insurer bears the burden of establishing that it has no duty to defend. *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1059 (2010). This burden includes affirmatively demonstrating the applicability of an exclusion. *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 34. Courts also narrowly read any policy provision that purports to exclude or limit coverage, and apply them only where the terms are " 'clear, definite, and specific.' " *State Farm Fire & Casualty Co. v. Perez*, 387 Ill. App. 3d 549, 553 (2008) (quoting *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005)).

¶ 27    The complaint need only state a claim that gives rise to a *possibility* of recovery under the policy, rather than a *probability* of recovery to trigger Allied's duty to defend. We first compare the allegations of the underlying complaint with the relevant portions of the policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010); *Pekin Insurance Co.*, 2012 IL App (1st) 111529, ¶ 14. This process forms the "eight corners rule." See *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698 (2000) ("the court should compare the four corners of the underlying complaint with the four corners of the insurance contract"). Indeed, in applying the "eight corners" rule, we conduct a *de novo* review of the complaint.

¶ 28                    Skolnik's Insurance Policies

¶ 29    The allegations of the complaint determine the duty to defend. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193 (1976). A threshold issue arises when the underlying complaint alleges several theories against the insured; the insurer has a duty to defend should any theory of recovery allege potential coverage. *Maxum Indemnity Co. v. Gillette*, 405 Ill. App. 3d 881, 886 (2010). While the allegation of intentional delivery of the fatal drug would remain outside the

coverage, the duty to defend is not extinguished when negligence is also alleged. We thus consider whether the two counts alleging negligence trigger the duty to defend.

¶ 30      Skolnik asserts the complaint alleges facts within or potentially within coverage. The policy provided a defense against any claim made or suit brought for damages due to bodily injury caused by an "occurrence" to which the coverage applied. The policy defines occurrence as an accident which results in bodily injury. Count I of the complaint alleged that Skolnik had a prescription for methadone for his own use and improperly stored the methadone, failed to remove it, and knew or recklessly disregarded the dangers of having it in the home. Count I also states that he "nonetheless delivered his own methadone [in an amount fatal] to Johnson," an intentional act that would not be covered.

¶ 31      Additionally, count I alleges that Skolnik negligently, carelessly, and improperly failed to request emergency medical assistance for Johnson within a reasonable period of time after knowing that she was physically incapacitated and unconscious or both; and knowing or discovering she ingested or unknowingly consumed methadone or other illegal substances from within the home. Further, count I alleges that Skolnik refused to allow Johnson's two friends to check on, talk to, see, or render aid to Johnson despite their request; and that Skolnik "took affirmative actions to Johnson's detriment" after discovering she was "dead, unconscious, and/or unresponsive in [the] home." Assuming these allegations to be true, is Skolnik possibly negligent, triggering Allied's duty to defend under the homeowners' policy?

¶ 32      Skolnik argues the negligence counts allege acts that have the potential of recovery under the insurance policies. In support of his position, Skolnik relies heavily on the New Jersey Supreme Court's decision in *Flomerfelt v. Cardiello,* 997 A. 2d 991 (N.J. 2010), where the court held that "in circumstances in which the underlying coverage question cannot be decided from

the face of the complaint, the insurer is obligated to provide a defense until all potentially covered claims are resolved." *Id*. at 999. It is the nature of the claim asserted in the pleadings, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation. *Id*. at 998. The New Jersey court found "circumstances arising from potentially concurrent causes." *Id*. at 1005. The court required the insurer to provide a defense where it had not yet been determined whether an injury arose out of drug use, which was excluded under the policy, or something else. *Id*. at 1006. The facts, like here, are heartbreaking.

¶ 33    The plaintiff, Wendy Flomerfelt, "sustained temporary and permanent injuries after she overdosed on alcohol and drugs during a party hosted by defendant Matthew Cardiello at his parents' home while they were out of town." *Id*. at 993. The complaint ascribed Flomerfelt's injuries to the ingestion of drugs, alcohol, or a combination of both, the serving of alcohol to her when she was visibly intoxicated, or the negligent failure to promptly summon aid. The defendant turned to his parents' homeowners' insurer, seeking defense and indemnification under the policy. *Id*. The insurer denied coverage, pointing to "the language of its policy that excluded claims '[a]rising out of the use, ... transfer or possession' of controlled dangerous substances." *Id*. The record was inconclusive as to the cause of the plaintiff's injuries; she may have been injured by alcohol or drugs or both, either before, during or even after the party, as there was a delay in summoning aid. *Id*. at 1005. On the face of the complaint, only some of the theories would support defendant's demand that his homeowners' insurer defend and indemnify him. *Id*. at 1003-04. The *Flomerfelt* court held the insurer owed its policyholder a duty to defend because there were potentially covered causes and claims. *Id*. at 1005-06.

¶ 34    Allied counters that the complaint alleges that Johnson's death resulted from controlled substances. While there is a dearth of Illinois case law on point, Allied cites *State Farm Fire &*

*Casualty Co. v. Young*, 2012 IL App (1st) 103736, which is inapposite. In holding that the allegations in the complaint fell within the exclusion for expected or intended injury, the court found that the well-pleaded facts alleged a combination of heroin overdose and beating caused the victim's death, both intentional actions of the defendant. *Id*. ¶ 19. The court then stated, "we do not look to the asserted legal theory, seeking to impose liability upon the defendant for his actions, to determine whether an accident occurred; rather, we look to the intended or expected results arising from the defendant's actions or, in this case, omissions." *Id.* ¶ 31. In other words, in *Young*, while the allegations concerning the defendant's failure to call 911 were labeled " 'negligence,' " there was no doubt that the defendant's failure to act was intentional and the result from his failure to act was expected. *Id*. ¶ 41. Thus, when the insured intends to cause the consequences of his conduct or the consequences are reasonably expected to result from that conduct, the insurer had no duty to defend. *Id*.

¶ 35        We find *Flomerfelt* more persuasive than *Young*. The facts in *Flomerfelt* are closer to this case and the issue before the court was the same. *Young*, on the other hand, addressed the intentional acts of the insured and the consequences of those acts.

¶ 36        Also looking outside our jurisdiction, as did Skolnik, Allied cites an Indiana and a Massachusetts case. Neither applies as the events in those cases substantially differ from this case.

¶ 37        In the Indiana case, *Forman v. Penn*, 945 N.E.2d 717 (Ind. Ct. App. 2011), a guest at the insured's home suffered permanent injuries after ingesting methadone prescribed to one of the home's occupants. The guest sued the insured under a homeowners' policy containing a controlled substances exclusion clause that was virtually identical to the case at bar, alleging negligent supervision and control over the prescribed methadone and "negligence in caring for

him after it was discovered that he could not be wakened." *Id*. at 719. The insured denied furnishing the methadone and asserted that the guest took the methadone without the insured's knowledge or participation. *Id*. The trial court granted summary judgment in the insurer's favor, and the court of appeals affirmed, finding that the guest's injuries "arose out of [his] use of the methadone, which was not a legitimate use of the drug pursuant to the orders of a licensed physician." (Emphasis omitted.) *Id*. at 721. (citing *Massachusetts Property Insurance Underwriting Ass'n v. Gallagher*, 911 N.E. 2d 808, 811 (Mass. App. Ct. 2009)). Despite the allegation of negligence in the complaint, the facts as outlined by the Indiana court of appeals only indicate the guest "could not be wakened" and ultimately was hospitalized. *Id*. at 719. Significantly, in a later case of *Forman,* the court explained, "although [in *Forman*] an occupant of the house had a prescription for the methadone, the injured party did not. [Citation.] Thus, his injuries clearly arose out of the illegitimate use of the drug." *Keckler v. Meridian Security Insurance Co.*, 967 N.E.2d 18, 26 (Ind. Ct. App. 2012). Negligence in caring for the victim was not addressed or even mentioned.

¶ 38      Allied also relies on an opinion from Massachusetts that addressed an insurance policy's exclusion for the use of controlled substances in the context of an apparent suicide. There, a guest died after overdosing on a controlled substance prescribed for the defendant homeowner. *Massachusetts Property Insurance Underwriting Ass'n v. Gallagher*, 911 N.E. 2d 808 (Mass. App. Ct. 2009). The decedent's estate alleged the homeowner negligently left a prescription painkiller in a place accessible to the guest. Unlike here, the plaintiff did not allege negligence in failing to act. The court held that the exception to the exclusion covering legitimate prescription use did not apply because the guest's own use of the painkiller caused his death, which "clearly [did] not fall within the exception." *Id*. at 811.

¶ 39                                    Proximate Cause

¶ 40          In the trial court, Skolnik argued the possibility of multiple proximate causes of Johnson's death and that the determination of what caused her death presented an issue of fact in the underlying case. The autopsy results indicated Johnson died of methadone intoxication. The blood tests also showed concentrations of GHB and Rohypno, allegedly put in Johnson's drink by Skolnik. The manner of death was "undetermined." Skolnik asserts that any determination of the cause of death would be an ultimate fact the trial court should have avoided by abstaining from granting summary judgment.

¶ 41          " 'A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause.' " *Crumpton v. Walgreen Co.*, 375 Ill. App. 3d 73, 79 (2007) (quoting *Chalhoub v. Dixon,* 338 Ill. App. 3d 535, 539 (2003)). It is well established that proximate cause requires both "cause in fact" and "legal cause." See, *e.g.*, *Lee v. Chicago Transit Authority,* 152 Ill. 2d 432, 455 (1992). As the Supreme Court of Illinois pointed out in *Lee,* these two requirements reflect "a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Id*. "Cause in fact can be established if a defendant's conduct can be deemed to be a substantial factor in bringing about the injury." *McKenna v. AlliedBarton Security Services, LLC*, 2015 IL App (1st) 133414, ¶ 37 (citing *Lee,* 152 Ill. 2d at 455). "Legal cause is essentially a question of foreseeability, where one determines whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* ¶ 38.

¶ 42          If a proximate cause of an injury comes within the included coverage of an insurance policy, the coverage is not voided merely because the policy excludes an additional proximate cause of the injury. See *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile*

*Insurance Co.,* 152 Ill. App. 3d 46, 48 (1987) (coverage exists for negligent supervision even though motor vehicle was underlying cause of injuries and policies contained exclusions; claim of negligent supervision is separate and distinct from operation, use, or ownership of the motor vehicle and, therefore, motor vehicle exclusion does not preclude coverage). Extrapolating from this holding, we find the claim of negligence here to be a potential separate and independent cause of Johnson's death.

¶ 43        At oral argument, Allied argued that the "sole proximate cause" test is not the test to determine whether an exclusion applies, asserting that the Second District in *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971 (1995), "essentially overturned" this court's ruling in *United States Fidelity & Guaranty Co.*, 152 Ill. App. 3d 46. First, this statement is faulty. Our supreme court has noted that the doctrine of *stare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of "equal or inferior courts." (Internal quotation marks omitted.) *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). An appellate court that disagrees with a result, or distinguishes a case from another district on the facts, lacks the power to overrule the case, but the opinion of one district is not binding on other districts. *Id.*

¶ 44        Second, the facts in *Smiley* are not analogous to the facts here. All actions and inactions by the Smileys related to their business, whereas Skolnik's omissions, as alleged, were independent of the methadone overdose. In *Smiley*, the husband and wife defendants ran a home child care business and were insured under a premises liability policy designed to cover only losses and injuries associated with the property itself, not those related to their business operations. The policy contained an exclusion clause for injuries arising out of business activities. After a child in the defendants' care accidentally drowned in their swimming pool, the

child's estate sued alleging that he had been in the care, custody, and control of the wife at the time of death and that her negligent acts or the husband's negligent failure to properly maintain the premises, or both, caused the child's death. In deciding the insurer had no duty to defend, the court found the alleged failure to supervise, failure to restrict access to the pool, and failure to provide adequate locks on the gate in the fence around the pool were all related to the duty to exercise due care to protect the child from dangerous household conditions. The court reasoned that the injuries "unquestionably originated or came about from the day-care services." *Smiley*, 276 Ill. App. 3d at 979. We will not extend the holding in *Smiley* to this case.

¶ 45    In its petition for rehearing, Allied points to language in *Westfield National Insurance Co.*, 348 Ill. App. 3d 987, regarding the definition of the phrase "arising out of" in a controlled substance exclusion clause. *Westfield*, citing *Smiley*, interpreted the phrase "arising out of" in an exclusionary clause to mean " '[t]o spring up, originate *** ' [citation], or 'to come into being,' 'to come about: come up: take place' [citation]. *Smiley*, 276 Ill. App. 3d at 978." *Westfield*, 348 Ill. App. 3d at 991-92. This argument, however, ignores the gravamen of our decision; *i.e.*, that Johnson's cause of death has not been conclusively established. *Westfield* decided the issue in the context of the defendant in the underlying lawsuit putting a methamphetamine drug in the plaintiff's daughter's drink, "causing a toxic overdose that caused her death." *Id*. at 988-89. Unquestionably, this was an intentional act that "arose out of" the use, sale, delivery, transfer or possession of a controlled substance.

¶ 46    Skolnik asserts that whether Johnson's prior alcohol and drug use or his "failure to summon aid" were contributing causes of her death are issues of fact to be determined by a factfinder. The record reveals that the negligence counts allege an omission, something far removed from actively giving or sharing heroin with the victim and then beating her as in *Young*,

where the failure to summon help was connected inextricably to the intentional act of the insured party. Here, despite the autopsy notation regarding cause of death, a genuine issue of material fact exists as to whether Johnson's death was caused solely by her methadone ingestion. The four corners of the complaint contain details that, if true, describe a lengthy and protracted period of time during which Skolnik could have sought assistance. The unknown is whether Johnson would have died if he had allowed Johnson's friends to see her, or called 911, or truthfully informed his parents earlier about Johnson's condition. Other potential causes include a genetic predisposition and a prior history of drug abuse.

¶ 47    We hold that the "drastic method" of disposing of a case by summary judgment should not be employed because an issue of material fact is present. *Murphy v. Urso*, 88 Ill. 2d 444, 463-64 (1981).

¶ 48                                  Premature claim

¶ 49    Skolnik's next argument closely relates to the issue of causation. Skolnik asserts that summary judgment was premature because there is substantial similarity of the issues in the underlying case and the declaratory judgment suit. Again, when uncertain as to whether to defend or refuse to defend, an insurer can file a declaratory judgment action to determine its obligations and rights. *United States Fidelity & Guarantee Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533, 536 (1994). In a declaratory-judgment action, the court may not determine an insured's actual liability nor determine any facts that may form the basis of an insured's liability. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993).

¶ 50    "[T]he issue before the declaratory court is the interpretation of a contract." *Oakley Transport, Inc. v. Zurich Insurance Co.,* 271 Ill. App. 3d 716, 725 (1995). The tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the

policy affords coverage. *Id*. That determination of coverage is "subject to the rules of contract construction, and not tort principles." *Id*. In construing an insurance policy, the court should examine the policy as a whole and interpret the words according to their plain, ordinary, and popular meanings; any doubts in meaning should be resolved in favor of the insured. *Id*. at 725-26.

¶ 51       The question before us involves Allied's duty to defend Skolnik against the claims, and its resolution does not prematurely determine facts alleged in the underlying complaint. Finding a duty to defend against the underlying claim of wrongful death due to negligence does not control the outcome of the ultimate question of liability or an obligation to indemnify. It is, rather, a determination of the insurance policy's requirements regarding the defense of an insured in a liability lawsuit. The complaint alleges a failure to summon assistance when it was apparent that Johnson was in distress. The question of Skolnik's negligence as alleged in the complaint can only be resolved after a full hearing on the facts and circumstances. In this regard, we find the reasoning of *Flomerfelt* persuasive. Was there an independent basis for liability in that Skolnik could have saved Johnson but he did not summon help? Because an issue of material fact exists, we cannot conclude without a doubt that Allied, as the moving party, is entitled to judgment as a matter of law. Our resolution imposes only the duty to defend against the allegations; the determination of liability is a question for the trial court in the underlying case.

¶ 52                                    "Legitimate Use" Exception

¶ 53       We need not address Skolnik's final argument on Illinois public policy favoring rehabilitation and treatment of controlled substance abusers. While drug use remains a vexing and persistent societal challenge and health problem, we leave the public policy concerns for another day.

¶ 54                                                    Conclusion

¶ 55          We reverse the trial court's grant of summary judgment in favor of Allied, and remand to

the trial court for further proceedings in accordance with this opinion.

¶ 56          Reversed and remanded.