**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170677-U

Order filed December 3, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-17-0677 |
| | ) | Circuit No. 12-MR-1732 |
| TRACY L. KENNEDY, MICHAEL R. | ) | |
| KENNEDY and TIFFANY LYNN | ) | Honorable |
| HOLLAND, | ) | John Anderson, |
| | ) | Judge, Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Carter and Wright concurred in the judgment.

**ORDER**

¶ 1  *Held*:  In insurer's action seeking a declaration that insurer was not obligated to indemnify or defend the insureds, the trial court properly granted insureds' motion for summary judgment and denied insurer's motion for summary judgment.

¶ 2  Plaintiff Erie Insurance Exchange (Erie) issued a home insurance policy and a separate umbrella policy to Defendants Tracy and Michael Kennedy (the Kennedys). Erie subsequently filed this declaratory judgment action seeking a declaration that Erie does not have a duty to defend or indemnify the Kennedys against a lawsuit filed against them by Tiffany Lynn Holland

(Holland), the Special Administrator of the estate of Abigail Holland (Abigail).  The parties filed cross motions for summary judgment.  The trial court granted summary judgment in favor of the Kennedys and Holland and denied Erie's motion for summary judgment.  Erie appeals the trial court's judgment.

¶ 3                                                                          FACTS

¶ 4         On April 26, 2007, the Kennedys submitted applications to Erie for primary and umbrella insurance policies relative to residential property they then owned in Aurora, Illinois (the residence).  The Kennedy's submitted their applications to the B.A. Schmidt Insurance Agency (B.A. Schmidt), Erie's authorized representative.  The applications included inquiries as to whether any business pursuits were being conducted at the residence and whether there was a swimming pool at the residence.  When a B.A. Schmidt representative inspected the residence, an above-ground swimming pool was present at the residence.

¶ 5         On April 30, 2007, Erie issued an "Ultracover HomeProtector Insurance Policy" (the primary policy) and a separate umbrella policy to the Kennedys.  The policies automatically renewed thereafter for four consecutive annual periods (from April 30, 2008 through April 20, 2012), without the submission of any updated applications by the Kennedys.

¶ 6         The primary policy provided personal liability coverage, which included coverage for losses incurred by the Kennedys as a result of bodily injuries or deaths occurring at any location, including the residence.  However, the primary policy excluded coverage for "[b]odily injury, property damage or personal injury arising out of business pursuits of anyone we protect."  The primary policy included an exception to the "business pursuits" exclusion which stated that "[w]e do cover *** activities normally considered non-business."  The policy further stated that it covered "occasional business activities of anyone we protect," including, but not limited to,

2

"babysitting, caddying, lawn care, newspaper delivery and other similar activities." However, it did not cover "regular business activities or business activities for which a person is required to have a license by the state." In another section, the primary policy stated that it did not cover "bodily injury or personal injury arising out of business pursuits of anyone we protect, other than business pursuits covered by this policy."

¶ 7    The umbrella policy included similar provisions, except that its "business pursuits" exclusion excluded coverage for personal injuries arising out of business pursuits "or business property" of anyone protected by the policy. The umbrella policy included similar exceptions to the "business pursuits" exclusion, including an exception that restored coverage for "activities normally considered non-business."

¶ 8    In addition, both policies excluded coverage for personal injury "to you and if residents of your household, your relatives, and persons under the age of 21 in your care or in the care of your resident relatives."

¶ 9    The Kennedys provided commercial day care services at their home from at least June 2010 through August 2011. As many as 11 minor children were under the Kennedys' care at their home. Tracy Kennedy charged between $150 and $175 per week for her day care services.

¶ 10    After receiving a report regarding the quality of care at the Kennedys' at-home day care business, the Illinois Department of Children and Family Services (DCFS) began a licensing investigation. During a visit to the residence, a DCFS investigator observed seven unsupervised children in the pool.[1] A Licensing Complaint Report dated June 8, 2011, stated that Tracy was

---

[1] The section of the Illinois Administrative Code governing licensing standards for pool safety at a day care center provides, in relevant part, that: (1) "[s]wimming and wading pools shall be appropriately maintained and supervised"; (2) all such pools shall comply with the Illinois Swimming Pool and Bathing Beach Code, 77 Ill. Admin. Code 820; and (3) all above-ground pools "shall have non-collapsible, non-climbable sidewalls that are at least 4 feet high or shall be enclosed with a fence" that is at least five feet

providing day care "for 3 fulltime and 2 part time children on a regular basis." That same day, DCFS sent Tracy Kennedy a letter advising her that her continued operation of a day care business without a license was a violation of the law and could result in the conviction of a "class A criminal misdemeanor punishable by prosecution, possible fine of up to $10,000, and imprisonment." The letter also stated that Tracy "[could not] obtain lability insurance to protect [her] from the hazards of law suits unless [she was] licensed."

¶ 11    Two days after receiving the warning letter from DCFS, Tracy Kennedy submitted an application for a commercial day care license to DCFS. She never obtained such a license. Nevertheless, she continued to care for children at her home and continued to charge money for her services.

¶ 12    Abigail began attending day care at the Kennedys' home in January 2011. She was two years old at the time. Tragically, on August 2, 2011, Abigail gained access to the above ground swimming pool at the Kennedys' residence and drowned. Although it is unclear how Abigail gained access to the pool, it appeared that she accessed the backyard from the Kennedys' residence through an unlocked garage door and thereafter either climbed or fell into the pool because a fence and/or gate surrounding the pool was unlatched or was otherwise open.

¶ 13    Tracy Kennedy was criminally indicted in connection with Abigail's death. The indictment alleged that Tracy had "assumed responsibility for Abigail Holland's care as a daycare operator after being notified by a DCFS representative that she was to cease such daycare operation until being licensed by DCFS, and said operation before licensing was the proximate cause of the death of Abigail Holland." Tracy pleaded guilty to endangering the life

high and secured with a locked gate. When such a pool is not in use, steps shall be removed from the pool or otherwise protected to insure they cannot be accessed. 89 Ill. Admin. Code § 407.290 (2010).

and health of a child pursuant to 720 ILCS 5/12-21-6(a) (West 2012) and was sentenced to two years' imprisonment.

¶ 14    On March 7, 2012, (two months after the State initiated criminal proceedings against Tracy), Holland filed a complaint for wrongful death against the Kennedys in the circuit court of Will County.  Count 1 of the operative complaint alleged that the Kennedys negligently failed to supervise or provide a safe environment for the children in their care, negligently operated their day care business without a license in violation of Illinois law, negligently safeguarded the means of ingress and egress to the backyard of their property, and negligently endangered the life of a child and caused a child's death.  The complaint further alleged that the Kennedys negligently failed to secure the swimming pool and the fence and/or gate surrounding the pool, and otherwise failed to ensure that the pool was inaccessible and did not present an attractive nuisance to children, including those in their care.  Count II repeated the specific allegations of negligence contained in Count 1 and sought recovery under the Wrongful Death Act, 740 ILCS 180/1-2 (West 2012).  Count III alleged that the Kennedy's had willfully and wantonly performed the acts and omissions alleged in Count I.

¶ 15    On July 17, 2012, Erie first received notice of Abigail's drowning and of the Holland action against the Kennedys.  Erie subsequently obtained coverage counsel to perform a coverage review. An  Erie claims supervisor and an Erie litigation specialist authored notes in the Erie claim file stating that: (1) "[t]his appears to be a business operation and there could be illegal activity involved"; (2) the Holland lawsuit "also alleges premises negligence"; and (3) "[w]e have premises v. business issues, business operations issues along with illegal activity issues."

5

¶ 16　　　　On August 9, 2012, Erie informed the Kennedys that it was denying coverage and that it refused to defend the Kennedys in the Holland litigation. Four days later, Erie filed the instant declaratory judgment action. Erie argued that the "Business Pursuits" exclusion in the policies applied and relieved Erie of any obligation to defend or indemnify the Kennedys because Abigail's death arose out of the Kennedys' day care business. Erie further maintained that the primary policy's exclusion of coverage for "business activities for which a person is required to have a license by the state" applied because, at the time of Abigail's death, Tracy Kennedy was illegally operating a commercial day care business without a State license, in contravention of DCFS's directive. Finally, Erie argued that there was no coverage or duty to defend because the policies excluded coverage for personal injuries to persons under the age of 21 in the Kennedys' care.

¶ 17　　　　Michael Kennedy and Holland each appeared and filed answers denying the complaint's material allegations. Tracy Kennedy filed a motion to stay the proceedings pending the outcome of the criminal proceedings against her, which the trial court granted. The stay lasted nearly three years until it was lifted on April 15, 2016. Tracy never filed a responsive pleading in the declaratory judgment action. On July 11, 2016, Erie filed a motion to default Tracy Kennedy, which the trial court granted.

¶ 18　　　　Erie subsequently filed a motion for summary judgment. In support of its motion, Erie submitted certain unauthenticated documents it had purportedly obtained through a Freedom of Information Act (FOIA) request, including the DCFS licensing complaint against Tracy Kennedy and the Aurora Police Department's report following Abigail's death.

¶ 19　　　　Michael Kennedy filed a consolidated cross-motion for partial summary judgment and response in opposition to Erie's motion for summary judgment. Michael averred that he had no

involvement in Tracy's home day care business because, during the relevant time period, an order of protection barred him from being at the residence. He argued that his lack of involvement in the day care business, among other facts, warranted a declaration that Erie was obligated to defend him in the Holland action.

¶ 20    Holland also filed a consolidated cross-motion for partial summary judgment and response in opposition to Erie's motion for summary judgment. Holland moved to strike the DCFS documents and police report submitted by Erie on the grounds that they were unauthenticated, contained hearsay statements, and were never produced by Erie during discovery.

¶ 21    On the merits, Holland argued that the "non-business activities" exception to the policies' exclusion for business activities applied because: (1) pool maintenance is "normally considered" a "non-business activity"; (2) the Holland complaint alleged negligence based on premises liability, not merely based upon the operation of the Kennedys' day care business (as an Erie claim supervisor and litigation specialist had acknowledged internally); and (3) no connection had been established between the pool and the Kennedys' day care business.

¶ 22    Holland further argued that, when applying similar policy language to a child care setting, previous decisions of our appellate court have focused on the specific activity of the insured that created the unsafe environment or condition for the child. According to Holland, where the activity creating the unsafe environment is not associated with the insured's business (such as pool maintenance in this case), the "nonbusiness activity" exception applies, and the "business pursuits" exclusion does not bar coverage.

7

¶ 23     In the alternative, Holland maintained that the "Business Pursuits" exclusion and the "Non-Business Activity" exception, when read together, were ambiguous and had be interpreted in favor of the Kennedys.

¶ 24     Holland also argued that the exclusion for injuries to persons under 21 years of age in the Kennedys' care applied only to resident children, not to children visiting the home for day care purposes. In the alternative, Holland argued that this exclusion was ambiguous and was therefore required to be construed in favor of coverage.

¶ 25     On December 14, 2016, the trial court entered an order (1) granting Holland's cross-motion for partial summary judgment, (2) denying Erie's motion for summary judgment, and (3) declaring that Erie could not invoke the "Business Pursuits" exclusion, the exclusion for business activities that require a State license, or the exclusion for injuries to persons under age 21 in the insureds' care in order to deny the Kennedys a defense in the Holland litigation. The trial court interpreted the latter exclusion as applying only to resident children. The court held that, at a minimum, that exclusion was ambiguous and therefore must be read in favor of the Kennedys.

¶ 26     The trial court further held that the "Business Pursuits" exclusion and the exclusion for businesses that required a State license did not apply. The court found that the cases cited by Erie (which held that the claims like those at issue here were barred by a "Business Pursuits" exclusion and which adopted a broad definition of an injury "arising out of" a business pursuit) were not controlling because the insurance policies at issue in those cases did not include a "non-business activity" exception to the business pursuits exclusion, as do the Erie policies at issue here.[2] The trial court reasoned that such exceptions are "construed broadly and in favor of the insured." Accordingly, because neither party had presented evidence as to whether the

_____

[2] The court also found that Erie's cases were not controlling" because they were factually distinguishable.

8

swimming pool at issue "was part of an allowable aspect of daycare for the children," the trial court found that Erie had failed to show that Abigail's death arose out of the business activities of the Kennedys. Alternatively, the court found that the primary policy's "Business Pursuits" exclusion was ambiguous when the policy was read as a whole.

¶ 27    The trial court also rejected Erie's argument for summary judgment based on the primary policy's exclusion for business activities that require a license by the State because the court found there was a genuine issue of material fact as to whether a State license was required for the operation of the Kennedy's day care business.

¶ 28    Tracy Kennedy was subsequently allowed to appear and to file a motion for summary judgment, which was granted. The trial court did not reach the question whether Erie had a duty to indemnify the Kennedys because it found that coverage issues depended upon undeveloped factual issues that might need to be resolved at a trial.

¶ 29    This appeal followed.

¶ 30                                    ANALYSIS

¶ 31    In this appeal, we are asked to decide whether the trial court erred by granting summary judgment for the Defendants and by determining that the Erie policies at issue did not relieve Erie of a duty to defend the Kennedys against the claims raised in the Holland action. Our analysis is guided by well-established principles governing the interpretation of an insurance policy and the review of motions for summary judgment.

¶ 32    "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court [and] are appropriate subjects for disposition by way of summary judgment." *Skolnik v. Allied Property and Casualty Insurance Co.*, 2015 IL App (1st) 142438, ¶ 22 (internal quotation marks omitted). Summary judgment is appropriate

9

when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We review the trial court's decision on a motion for summary judgment *de novo. Id.* This same standard applies in a case involving a duty to defend. *Id.*; see also *Pekin Insurance Co. v. Equilon Enterprises LLC*, 2012 IL App (1st) 111529, ¶ 12.

¶ 33        The duty of an insurer to defend is separate from and broader than the duty to indemnify. *Skolnik*, 2015 IL App (1st) 142438, ¶ 25; *Westfield National Insurance Co. v. Long,* 348 Ill. App. 3d 987 (2004). "[E]ven if an insurer ultimately may not be obligated to indemnify, if the allegations in a complaint state a cause of action that gives rise to the possibility of recovery under the policy, the insurer's duty to defend is called into play." *American Country Insurance Co. v. Cline*, 309 Ill. App. 3d 501, 512 (1999). Where the underlying complaint alleges facts within or potentially within the scope of coverage, the insurer must defend its insured, even if the allegations are groundless, false, or fraudulent (*Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000)), or the probability of recovery is minimal (*Hertz Corp. v. Garrott*, 207 Ill. App. 3d 644, 648 (1990)). In other words, to trigger the insurer's duty to defend, the complaint need only state a claim that gives rise to a *possibility* of recovery under the policy, rather than a probability of recovery. *Skolnik*, 2015 IL App (1st) 14243845, ¶ 27. Moreover, a duty to defend arises even when only one of multiple theories asserted in the complaint is potentially within the coverage of the policy. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods, Co.*, 215 Ill. 2d 146, 155 (2005).

¶ 34        In determining whether a duty to defend arises, we must compare the allegations of the underlying complaint with the relevant terms of the policy. *Id.*; see also *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). If the terms of an insurance policy are susceptible to more than one meaning, they are considered ambiguous, and any doubts regarding coverage must be

10

resolved in the insured's favor. *Maryland Casualty Co. v. Dough Management Co.*, 2015 IL App (1st) 141520, ¶ 51.

¶ 35     The terms of an insurance policy must be read according to their plain and ordinary meaning, and a court should not search for an ambiguity where none exists. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5 (1981); *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 977 (1996).  In determining whether the terms of a policy are ambiguous, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. *Smiley*, 276 Ill. App. 3d at 977; *Insurance Co. of Illinois v. Markogiannakis*, 188 Ill. App. 3d 643, 654–55 (1989).  All the provisions of the policy should be read together to aid interpretation and to determine whether an ambiguity exists. *Schnackenberg*, 88 Ill. 2d at 5.  As noted above, ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured. *Smiley*, 276 Ill. App. 3d at 977.  However, if the provisions of the policy are clear and unambiguous, there is no need for construction and the provisions will be applied as written. *Smiley*, 276 Ill. App. 3d at 977; *Markogiannakis*, 188 Ill.App.3d at 655.

¶ 36     The insurer bears the burden of establishing that it has no duty to defend.  *Skolnik*, 2015 IL App (1st) 14243845, ¶ 26. This burden includes affirmatively demonstrating the applicability of an exclusion. *Id.*  see also *American States Insurance Co. v. Action Fire Equipment, Inc.*, 157 Ill. App. 3d 34, 42 (1987) (where an insurer attempts to limit liability by excluding coverage, it has the burden of showing that the claim falls within the exclusion relied upon).  The applicability of the exclusion must be clear and free from doubt.  *Id.*; see also *State Farm Fire & Casualty Co. v. Perez*, 387 Ill. App. 3d 549, 553 (2008) (courts narrowly read any policy provision that purports to exclude or limit coverage, and apply them only where the terms are

11

"clear, definite, and specific") (internal quotation marks omitted.) Conditions, exclusions, or exceptions to coverage in an insurance police are to be strictly construed against the insurer. *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App. 3d 574, 583 (1985).

¶ 37        The question presented in this appeal is whether any of the three policy exclusions invoked by Erie relieve Erie of any duty to defend the Kennedys in the Holland litigation as a matter of law. As noted, Erie relies on the exclusion for injuries arising out of the Kennedys' "business pursuits", the exclusion for business activities requiring a State license, and the exclusion for injuries to persons under age 21 who are under the Kennedy's care. We will address each exclusion in turn.

¶ 38                              1. Business Pursuits Exclusion

¶ 39        Erie argues that it has no duty to defend the Kennedys in the Holland litigation because Abigail's death "arose out of" the Kennedys' operation of a day care business. Holland and the Kennedys concede that the Kennedys at-home day care business was a "business pursuit" under the policies. However, they argue that Abigail's death did not "arise out of" that business pursuit because: (1) the "business pursuits" exclusion in the Erie policies at issue contained an exception for activities that are "normally considered non-business activities"; (2) the Holland complaint alleged, in part, that the Kennedys proximately caused Abigail's death by negligently maintaining the pool and/or the premises around the pool; (3) pool maintenance is normally considered to be a non-business activity; and (4) Erie failed to establish a connection between the pool and the Kennedys' day care business (*i.e.*, Erie failed to show that the Kennedys used the pool in connection with their business). Thus, the defendants argue that the policies' "business pursuits" exclusion does not eliminate Erie's duty to defend.

12

¶ 40    In *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d 250 (1981), our appellate court construed policy exclusions and exceptions similar to those contained in the Erie policies at issue in this case. The policy in *Moore* provided that it did not apply to bodily injury or property damage arising out of business pursuits of any insured "except activities therein which are ordinarily incident to nonbusiness pursuits." The insured agreed to babysit a child named Marcus for compensation. While the insured was preparing lunch for Marcus, herself, her husband, another child, and one of her own children, Marcus pulled a pan of boiling water on himself and was burned. Applying the policy's exclusion and the exception together, our appellate court held that Marcus's injury did not arise out of the insured's business pursuit (babysitting), and that the exception for "activities which are ordinarily incident to nonbusiness pursuits" applied.

¶ 41    In so holding, our appellate court determined that "[t]he fact that the injury occurred on business premises is not conclusive," and that "the exception applies where the activity [that led to the injury] is not incident to a business purpose." *Moore*, 103 Ill. App. 3d at 254. Our court further ruled that "[t]he appropriate inquiry is not whether the insured was engaged in a business pursuit at the time of the accident, but whether the particular activity was nevertheless one ordinarily incident to non-business pursuits." *Id.* Our appellate court noted that the policy in *Moore* covered acts which by their nature are not associated with the insured's business pursuits but which are causally related to the business activities. *Id.* In determining whether the "nonbusiness activity" exception applied, our court ruled that "[a] test of 'but for the business relationship, the child would not be present in the insured's home,' is not appropriate" *** "Instead, the court must examine the particular activity which proximately caused the injury and determine if that activity is one ordinarily associated with a babysitter's function." *Id.*

13

¶ 42        Applying these principles, our appellate court held that Marcus's injuries did not arise

from the insured's babysitting business but rather arose from an activity ordinarily incident to a

nonbusiness pursuit (*i.e.*, her preparation of lunch for herself and her family).  Our court

explained:

>    "[W]e must consider what activity caused Marcus's injury. *** Marcus was
>
>    burned by a pan of hot water which the insured was using to prepare lunch for
>
>    herself, her child, and the two children for whom she sat. She would have
>
>    prepared lunch regardless of Marcus's presence. *** Marcus apparently was
>
>    injured as the result of Moore's activity in preparing lunch. Generally, preparation
>
>    of lunch is ordinarily incident to a non-business pursuit. [Citation]  As the lunch
>
>    was for [the insured] and her child as well as the children for whom she sat, her
>
>    activity falls within the exception."  *Id.*[3]

¶ 43         Applying these standards to the case at bar, we find that the trial court's judgment was

correct.  As an initial matter, the policies' "business pursuits" exclusion, when read together with

the "non-business" exception, is ambiguous on its face.  The policy does not define "business

pursuits," nor does it expressly include the provision of daycare services within that category.

Moreover, the policy defines the term "business" as "any full time, *part time, or occasional*"

---

[3] In another case, our appellate court declined to apply an exception to a policy's exclusion of
business pursuits where the activity causing the child's injury was directly or intrinsically related to the
insured's day care business.  See *Economy Fire & Casualty Co.* v. *Bassett*, 170 Ill. App. 3d 765, 770
(1988) (where child attending insured's at-home day care service was struck in the insured's driveway by
a car driven by the parent of another child who had arrived to pick her child up from day care, the child's
injuries arose from the insured's business pursuits and non from an activity "ordinarily incident to non-
business pursuits"; reasoning that the use of the driveway by parents to drop off or pick up their children
was an activity ordinarily associated with the business and the child would not have been injured had the
insured properly supervised the child).

activity engaged in as a trade, profession, or occupation, including farming." (emphasis added.)[4] However, the policies also include an exception to the business pursuits exclusion for "occasional business activities," such as babysitting. Reading these provisions together, it is not clear which "occasional business activities" constitute "business pursuits" (and are therefore excluded), and which "occasional business activities" qualify for the non-business exception. Further complicating and confusing the matter is the fact that one of the "business pursuits" exclusions in the primary policy contains a "non-business exception" while a separate exclusion for "business pursuits" in the same policy does not.

¶ 44          A provision in an insurance policy is ambiguous if it is subject to more than one reasonable interpretation. *Milwaukee Guardian Insurance, Inc. v. Taraska*, 236 Ill. App. 3d 973, 974 (1992). Here, the "business pursuits" exclusion, when read together with the "non-business activity exception" is unclear and subject to competing reasonable interpretations from the perspective of a reasonable insured. See, *e.g.*, *State Farm Fire & Casualty Company v. MacDonald*, 87 Ill. App. 2d 15, 19 (1967) (ruling that a policy's exception for non-business activities was ambiguous and obscured the meaning of the policy's exclusion for business activities); *Aetna Insurance Company v. Janson*, 60 Ill. App.3d 957, 961 (1978) (policy's exclusion for business pursuits, when read in light of policy's non-business activities exception, was unclear and ambiguous as applied to facts presented); see also *Moore*, 103 Ill. App. 3d at 257-58); *Economy Fire & Casualty Company v. Second National Bank of Danville*, 91 Ill. App. 3d 406 (1980); *Reis v. Aetna Casualty Insurance Company*, 69 Ill. App. 3d 777 (1978). As such, we must construe the exclusion strictly against the insurer and in favor of coverage. *Mitchell Buick & Oldsmobile Sales, Inc.*, 138 Ill. App. 3d at 583; *Smiley*, 276 Ill. App. 3d at 977; *Moore*,

---

[4] A policy's definition of "business" does not determine the meaning of the policy's undefined term "busines pursuits." See generally *Bishop v. Crowler*, 101 Ill. App, 3d 933, 940 (1981).

15

103 Ill. App. 3d at 257-58; see also *American States Insurance Co.*, 157 Ill. App. 3d at 42 (insurer has the burden of showing that the claim falls within the exclusion relied upon, and the applicability of the exclusion must be clear and free from doubt); *Perez*, 387 Ill. App. 3d at 553 (courts read exclusions narrowly and apply them only where the terms are "clear, definite, and specific").

¶ 45        In any event, assuming *arguendo* that relevant policy terms are not ambiguous on their face, summary judgment would still be proper for the Defendants. Pursuant to *Moore*, the dispositive issue is whether the activity that proximately caused Abigail's death (*i.e.*, her obtaining access to the pool on the Kennedys' premises and the Kennedys' alleged negligence in maintaining and securing the pool) was "ordinarily associated with the operation of the Kennedys' daycare business," or whether it would "ordinarily [be] considered [a] nonbusiness" activity, and therefore excepted from the policies' busines pursuits exclusion.

¶ 46        Although Erie bore the burden of demonstrating the applicability of the business pursuits exclusion (*Skolnik*, 2015 IL App (1st) 14243845, ¶ 26; *American States Insurance Co.*, 157 Ill. App. 3d at 42), it presented no competent evidence suggesting that the Kennedys operation or maintenance of their pool was associated with their daycare business. Erie cited an Aurora Police Report and a DCFS investigator's report, both of which stated that seven children were seen in the insured's swimming pool, as evidence that the pool was used in the Kennedys provision of commercial day care services. This evidence is likely inadmissible on summary judgment because the police report was never presented in support of or in opposition to summary judgment and contained hearsay statements, and the DCFS report was not authenticated and contained hearsay statements. In any event, because neither document identifies who the children in the pool were and whether they were children receiving day care services (as opposed

16

to the insured's own biological children and their friends), neither document constitutes evidence that the pool was associated or used in connection with the Kennedys' day care business.

¶ 47    Moreover, Erie's extremely narrow interpretation of the policy's exception for "activities ordinarily considered nonbusiness" cannot be correct.   According to Erie, "[t]his exception does not create coverage and only reiterates that the exclusion applies to business activities and does not apply to non-business activities."   That interpretation would render the "nonbusiness" exception superfluous.   A provision in an insurance policy may not be interpreted in a way that would render it meaningless or superfluous.   See, *e.g.*, *Murbach v. Noel*, 343 Ill. App. 3d 644, 647 (2003); *Sims v. Allstate Insurance Co.*, 365 Ill. App. 3d 997, 1000-01 (2006); see also *Kern v. Michigan Mutual Liability Co.*, 129 Ill. App. 2d 423, 429 (1970) (In construing a contract, it must be assumed that all language is inserted for a purpose.).   Accordingly, we reject Erie's interpretation of the policies' "non-business" exception.

¶ 48    In support of its argument on this issue, Erie principally relies on two decisions of our appellate court, *Allstate Insurance Co. v. Mathis*, 302 Ill. App. 3d 1027 (1999), and *Smiley*, 276 Ill. App. 3d 971.   Neither case supports Erie's argument.   In *Mathis*, our appellate court ruled that, where the insured babysat an infant for compensation and the child was accidentally suffocated while in the insured's care, the child's death arose out of the insured's duty to supervise and protect the child, which was a duty "directly correlated to providing day care services." *Mathis*, 302 Ill. App. 3d at 1030.   On that basis, our appellate court held that that the infant's fatal injuries fell within the policy's exclusion for business activities and were therefore not covered. *Id.*

¶ 49    Similarly, in *Smiley*, our appellate court held that the drowning death of a 20-month-old child in a pool located on the premises of an insured's at-home day care business fell within the

17

policy's exclusion for injuries arising out of the insured's business activities. *Smiley*, 276 Ill. App. 3d 971. Like Abigail in this case, the child in *Smiley* obtained access to a pool on the insured's premises and drowned while under the care, custody, and control of the insured. Our appellate court held that the infant's death "arose out of" the insured's business activities because the child was on the insured's premises only because his parents had paid the insured to provide day-care services to him, and those services included the duty to exercise due care to protect the child from any dangerous household conditions. *Smiley*, 276 Ill. App. 3d at 979. Accordingly, our appellate court held that the child's death "unquestionably originated or came about from the day-care services [the insured] was paid to provide," and were therefore not covered. *Id.*, 276 Ill. App. 3d at 979.

¶ 50    *Mathis* and *Smiley* each suggest that, when a child receiving day care services is injured due to the insured's failure to supervise the child while he or she was in the insured's care, the child's injury "arises out of" the insured's day care business and therefore falls within the policy's "business pursuits" exclusion. *Smiley* also suggests that, if the child would not have been at the insured's premises (where the injury occurred) but for the insured's business, then the exclusion for business pursuits should apply.

¶ 51    *Mathis* and *Smiley* are inapposite and provide no guidance here because neither case involved insurance policies containing an exception to a business pursuits exclusion for non-business activities, as do the Erie policies in this case. When our appellate court has interpreted similar exceptions, it has held that injuries caused by acts which are not by their nature associated with the insured's business pursuits are covered by the insurance policy, even if such acts, in a particular case, have some causal relationship with the insured's business. *Moore*, 103 Ill. App. 3d at 254. Moreover, *Moore* explicitly rejects the "but for" test endorsed in *Smiley*, at

18

least where, as here, the policy's business pursuits exclusion is modified by an exception for certain non-business activities.  *Moore*, 103 Ill. App. 3d at 254.

¶ 52                     2.  Exclusion for business activities requiring a license

¶ 53        Erie also argues that it has no obligation to indemnify the Kennedys or to defend them in the Holland lawsuit pursuant to the primary policy's exclusion of coverage for "business activities for which a person is required to have a license by the state."  This argument fails for the same reason that Erie's former argument failed. As noted, Abigail's death was caused by her obtaining access to the pool on the Kennedys' premises.  Erie has the burden to demonstrate that the policy's exclusion of coverage for "business activities" for which a person is required to have a license by the state applies to that activity. *Skolnik*, 2015 IL App (1st) 14243845, ¶ 26; *American States Insurance Co.*, 157 Ill. App. 3d at 42; *Moore*, 103 Ill. App. 3d at 254.  To discharge that burden in summary judgment proceedings, Erie had to present some competent evidence supporting its assertion that operating or maintaining the pool was an activity ordinary associated with the Kennedys' daycare business, rather than to a non-business purpose.  As noted, Erie failed to present any such evidence.

¶ 54        Moreover, if the primary policy's exception for "nonbusiness activities" applies here, then that exception would also render the exclusion for business activities requiring a license inoperative.  As noted, the policy is ambiguous as to whether that exception applies in this case, and any such ambiguity must be resolved in favor of coverage.  *Mitchell Buick & Oldsmobile Sales, Inc.*, 138 Ill. App. 3d at 583; *Smiley*, 276 Ill. App. 3d at 977; *American States Insurance Co.*, 157 Ill. App. 3d at 42; *Perez*, 387 Ill. App. 3d at 553.

¶ 55                            3. Exclusion for injuries to persons under age 21

¶ 56        Erie also argues the policies' exclusion for personal injuries "to you and if residents of your household, your relatives, and persons under the age of 21 in your care or in the care of your resident relatives" precludes any duty on Erie's part to defend or indemnify the Kennedys because Abigail was two years old and in the Kennedys' care at the time of her death. Erie interprets this provision as excluding coverage for *any* person under age 21 in the care of the insureds, which would include the children to whom Tracy Kennedy provided day care services. The Defendants, by contrast, construe the provision as excluding coverage only for persons under the age of 21 in the care of the insureds *who are residents of the household*. In other words, the Defendants read the word "residents" in the exclusion as modifying the rest of the sentence, whereas Erie interprets the word "residents" as modifying only the phase "your relatives." Thus, on Erie's view, the insureds' relatives are covered only if they are residents of the insureds' household, but "persons under the age of 21 in your care or in the care of your resident relatives" are covered even if such children do not reside with the insureds.

¶ 57        We find the exclusion at issue to be ambiguous. Given the confusing wording of the provision, we find both parties' interpretations to be reasonable. As noted, courts must interpret any ambiguity in an exclusion against the insurer and in favor of coverage. *Mitchell Buick & Oldsmobile Sales, Inc.*, 138 Ill. App. 3d at 583; *Smiley*, 276 Ill. App. 3d at 977. Thus, the trial court properly granted the Defendants' motion for summary judgment and denied Erie's motion as to this issue.

¶ 58                                  CONCLUSION

¶ 59        For the reasons set forth above, we affirm the judgment of the circuit court of Will County.

¶ 60        Affirmed.